**Ronald O. SPITZ, Plaintiff–Appellee, Cross–Appellant,**

v.

**Arthur H. TEPFER, et al., Defendants– Appellants, Cross–Appellees.**

**Nos. 97–3276, 97–3330.**

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1998.

Decided March 17, 1999.

**DIANE P. WOOD, Circuit Judge.**

Ronald Spitz and Arthur Tepfer were co-owners of a retirement plan consulting business, Tepfer & Spitz, Ltd. ("T & S"). Ironically, this case reflects a pitched battle between the two, along with two other employees who sided with Tepfer, over T & S's own 401(k) profit sharing plan. Spitz believed that Tepfer had played fast and loose with the plan, and he brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking declarations that Tepfer's actions were illegal, that Tepfer and the other two defendants were not entitled to certain contributions by T & S to their 401(k) accounts, and that Tepfer had to repay a $48,000 loan he had received from the T & S plan. The district court ruled in Spitz's favor on all points except his request for attorneys' fees pursuant to ERISA § 1132(g)(1); it rejected Tepfer's ERISA-based counterclaim. We conclude that the district court should have recognized disputed issues of material fact with respect to the contested loan, and that the case must therefore be remanded for further proceedings. In addition, however, we conclude that Spitz is entitled to attorneys' fees under ERISA to the extent he may prevail in the end. We therefore remand for further proceedings on this point as well.

**I**

T & S began operations in December 1990. Spitz and Tepfer each owned 50% of the company's shares, and they were its sole directors and officers: Spitz served as president, and Tepfer served as secretary. In January 1991, T & S established the 401(k) profit sharing plan ("the Plan") that lies at the heart of this suit. T & S was the sponsor and administrator of the Plan, while Spitz, Tepfer, and employee Frederic A. Fenster served as trustees. Under § 6.4(b) of the Plan, no employee was fully

David A. Belofsky (argued), David A. Belofsky & Associates, P.C., Chicago, IL, for Plaintiff–Appellee.

Robert R. Tepper (argued), Chicago, IL, for Defendants–Appellants.

Before FLAUM, MANION, and DIANE P. WOOD, Circuit Judges.

vested until he or she had completed six years of service with T & S.

At some point prior to mid–1995, Tepfer took a number of steps that led to his departure from T & S. First, in March 1995, he filed a suit in state court to force a dissolution of T & S. Tepfer's complaint also alleged that Spitz had committed various torts. This gambit was not as successful as Tepfer had hoped, because the state court eventually ordered a buyout and required him to pay damages to T & S for taking company assets when he later left the firm. In all, Tepfer lost $103,000 and all his interest in T & S as a result of that action.

Meanwhile, still prior to his departure from T & S, Tepfer formed an independent corporation known as Tepfer Consulting Group, Ltd. ("TCG"), for which he served as the sole shareholder and president. On June 8, 1995, without informing Spitz, Tepfer executed a document entitled "Fourth Amendment to the Tepfer & Spitz, Ltd. 401(k) Profit Sharing Plan and Trust" (the "Fourth Plan Amendment"). The T & S Board of Directors never adopted, ratified, or approved this alleged Fourth Plan Amendment; indeed, Spitz did not discover its existence until some time in 1996. Spitz claimed, and the district court agreed, that the Fourth Plan Amendment unambiguously provided that all participants in the T & S Plan became 100% vested as of January 1, 1995. (Tepfer contested this characterization before the district court, but for the reasons stated by that court, we agree with its interpretation of the amendment.) The Fourth Plan Amendment also stated that employees were guaranteed to receive their allocation of the T & S annual contribution to the Plan even for a year during which they left employment. Without the amendment, § 4.4(b)(2)-(4) of the Plan excluded participants from receiving any part of the "matching contribution" from T & S for a given year if they were not actively employed with the company on the last day of that year.

A few days earlier, on June 2, 1995, Tepfer withdrew $48,000 from the Plan without Spitz's knowledge. He did so by drafting a document entitled "Participant Loan Program," so that he could characterize this transaction as a loan. Nothing in the three-page Participant Loan Program document indicated that anyone associated with the Plan had approved its incorporation into the Plan, as required by § 7.4 of the Plan document. On the other hand, the attorney who drafted the original Plan executed an affidavit in which she said that the loan program had been part of the Plan from the beginning. More importantly, Part VIII of the Summary Plan Description ("SPD") described a program for securing loans from the Plan.

Having laid the groundwork as described, Tepfer resigned from T & S on June 9, 1995, so that he could devote his full attention to TCG. Fenster followed him on June 12, 1995, as did T & S employee Nolan S. Frank. A little more than a year later, on September 12, 1996, Spitz filed the action now before us. In it, he requested eight specific forms of relief against Tepfer, Fenster, and Frank:

1. A declaration that the Fourth Plan Amendment was invalid.

2. A declaration that the Participant Loan Program was invalid.

3. A declaration that Tepfer and Fenster were no more than 60% vested in the T & S Plan.

4. A declaration that Frank was no more than 20% vested in the T & S Plan.

5. A declaration that Tepfer, Fenster, and Frank were not entitled to a contribution by T & S to their 401(k) accounts for 1995 because they were not employed by T & S on the last day of the year, as required by § 4.4(b) of the Plan.

6. An order requiring Tepfer immediately to repay to the T & S Plan the $48,000 loan he had taken out.

7. An injunction prohibiting the three defendants from filing baseless complaints with the U.S. Department of Labor about Spitz's conduct as trustee of the 401(k) Plan, or about the Plan itself.

8. An order granting Spitz his attorneys' fees and costs, as allowed by ERISA.

The defendants denied Spitz's allegations and filed a counterclaim against Spitz and T & S based on Spitz's alleged refusal to respond to their requests for information on their benefits status, in violation of his duties as Plan administrator. The district court granted Spitz's motion for summary judgment on July 7, 1997, but it refused to grant his petition for fees or costs, on the theory that they were not appropriate in an action brought under the Declaratory Judgment Act for relief that it believed was essentially "legal," not "equitable." Tepfer and his co-defendants appealed, and Spitz cross-appealed the adverse decision on fees.

## II

■ We preface our discussion of the merits of the appeal with some preliminary observations about jurisdiction. As we noted, the present federal suit was preceded by a case covering much the same ground in state court—specifically, the Circuit Court of Cook County, Chancery Division. Nevertheless, there is no reason to be concerned about this court's jurisdiction or any possible preclusion defenses. First, many of the events about which Spitz is complaining had not yet occurred at the time Tepfer filed the state court action, and thus they would not have been supported by the same evidence nor considered part of the same transaction at issue there. See *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 956 (7th Cir.1997). Second, the defendants did not raise any kind of res judicata defense, and it is clear that such a defense can be waived. *Allahar v. Zahora*, 59 F.3d 693, 695 (7th Cir. 1995). Finally, and most important,

Spitz's present claim arises under ERISA, and thus it falls within the exclusive jurisdiction of the federal courts. 29 U.S.C. § 1132(e)(1). Because Spitz therefore could not have raised his ERISA-based claims in any fashion before the state court, and as the defendant he was not the person who selected the state forum, it is likely that he could not be precluded here. See *River Park, Inc. v. City of Highland Park,* 184 Ill.2d 290, 234 Ill.Dec. 783, 703 N.E.2d 883, 896 (1998).

■ Our review of the record also assures us that the judgment of the court below was final for purposes of appeal under 28 U.S.C. § 1291. Although the trial court, in its summary judgment order, granted Tepfer and his co-defendants leave to reassert Count II of their amended counterclaim once they effected proper service upon T & S, this loose end did not ultimately deprive the judgment of its finality. The trial court later revisited this portion of its ruling, noting that the defendants never properly named T & S as a party to the lawsuit in the first place, which they should have done by means of a third-party complaint. Accordingly, in an order dated July 23, 1997, the court dismissed Count II of defendants' amended counterclaim as not properly before it and closed the case. We also note that, although the order granting summary judgment does not directly adjudicate Spitz's initial request for an injunction prohibiting the defendants from filing frivolous complaints with the Department of Labor, this is because Spitz failed to prosecute it. Spitz's motion purports to request summary judgment on all allegations in the complaint and counterclaim without reservation, but the specific relief he requests (which would and did fully resolve each of his other claims) omits the injunction he proposed in his complaint. Nor does Spitz mention such an injunction in his cross-appeal. He has evidently long since abandoned that claim. Moreover, the tenor of the summary judgment opinion reflects the trial court's intent to dispose of all the

issues in the lawsuit (except Count II of the counterclaim, which as we mentioned was dismissed in a separate order). The fact that its order does not explicitly discuss the fate of the abandoned request for an injunction is the sort of technical defect that does not upset the order's finality, for it is clear that the court implicitly found against Spitz on this claim. This is enough to secure our appellate jurisdiction. See *Eberhardt v. O'Malley*, 17 F.3d 1023, 1024 (7th Cir.1994); *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 331 (7th Cir.1993).

### A. *The $48,000 Loan*

Tepfer's first argument on appeal is that genuine issues of fact existed that made summary judgment inappropriate on the second and sixth points in the complaint, to which we refer here as the loan issues. The district court based its decision to order Tepfer to repay the $48,000 immediately on two grounds: first, it found that the loan program under which Tepfer claimed the money was borrowed was not a proper part of the Plan; and second, it found that Tepfer had not followed proper procedures when he applied for the loan. We agree with Tepfer that it was premature to enter a judgment for Spitz on either of these grounds.

■ The second point was raised for the first time in Spitz's reply brief before the district court at the summary judgment stage. As far as we can tell from the record, which lacks a transcript of the hearing on the motion to reconsider, Tepfer never had a chance to respond to it. The district court therefore should not have based its decision in the alternative on the lack of a proper application. See, e.g., *Oates v. Discovery Zone*, 116 F.3d 1161, 1169 n. 8 (7th Cir.1997); *Local 322, Allied Indus. Workers v. Johnson Controls, Inc.*, 969 F.2d 290, 293 (7th Cir.1992). That is not to say that on remand Spitz should be barred from raising this point. To the contrary, since we find further proceedings are necessary on the loan issue, either party is free to rely on anything it

wishes, in compliance with whatever case management orders the district court may wish to enter. But in the posture of the case as it stood when the district court ruled, the lack of a proper application was not an available alternative ground on which summary judgment could be supported.

■ The principal ground on which the district court relied was that the Participant Loan Program was not a proper part of the Plan, because it had never been properly executed and formally incorporated into the Plan. The court began by noting that the Plan specified that "[t]he Employer shall have the right at any time to amend the Plan," which under *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78–79, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995), is enough to satisfy ERISA requirements for amendments. Assuming, therefore, that the loan program amounted to an amendment, the court thought the proper question was whether Tepfer had the authority unilaterally to amend the Plan.

■ Knowing the way the case has been presented to this court, we sympathize with the difficulty the district court must have faced in distilling the key contentions of the parties. With respect, however, we think that this was not quite the right question. Instead, the court should have looked to see if there was a genuine dispute of fact about the scope of the T & S Plan even before Tepfer wrote out the Participant Loan Program. Our starting point here is with the SPD, which contains an entire section describing a loan program for the Plan. Whether or not Tepfer relied on that SPD language is beside the point, under decisions that have held that SPD language trumps contrary plan language. *E.g., Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1023 (7th Cir.1998). An affidavit proffered by (but not accepted from) the attorney who drafted the Plan buttresses the SPD language. She claims

that a loan program had been part of the Plan from the beginning. Since the SPD certainly does not preclude a loan program, we think this extrinsic evidence also supports Tepfer's contention that there was indeed a *bona fide* loan program, and that he was just taking advantage of it in a particular way when he borrowed the $48,000.

■ On the other side, we confront the rule that when a plan gives its administrator discretion to interpret it, as the T & S Plan does, courts review denials of benefits using the "arbitrary and capricious" standard of review. See, *e.g., Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Mers,* 144 F.3d at 1019. At this point, Spitz is the only person left at T & S who matters. He is therefore the only Plan administrator, and he says the Plan does not include a loan program at present. The mere fact that Spitz has a potential conflict of interest between his role as owner of T & S and his role as plan administrator is not enough by itself to dismiss his interpretation of the Plan. See *Mers,* 144 F.3d at 1020. Furthermore, it is not without moment that Spitz had reason to believe that Tepfer was trying to loot the company and the Plan. He was weighing the appropriateness of incorporating a three-page typewritten "program" that supposedly implemented the Plan (or perhaps amended it) whose source was the same person who forged the Fourth Plan Amendment to give himself immediate 100% vesting.

However unfavorable the latter facts may ultimately be to Tepfer's case, we conclude that there are nonetheless disputed issues of fact on the existence and scope of the program under which Tepfer took the $48,000. Spitz was therefore not entitled to summary judgment with respect to the loan program, and the case must go back for further proceedings on this point.

### B. *Vesting, Plan Participation, Plan Termination*

■ The second issue Tepfer, Fenster, and Frank present concerns points 1, 3, 4, and 5 of Spitz's complaint: in general, whether the district court used the proper vesting percentages and correctly allocated the 1995 T & S contribution. In footnote 6 of its opinion, the district court pointed out that Spitz wanted declarations that neither Tepfer nor Fenster was more than 60% vested at the time of their respective terminations, that Frank was not more than 20% vested at the time of his termination, and that neither Tepfer nor Fenster was entitled to share in T & S's 1995 contribution to the Plan. As to these assertions, the district court found that the defendants had failed to submit any evidence under Local General Rule 12(N) that raised any issue of fact to be adjudicated. Having reviewed the 12(N) statement ourselves, we agree with the district court's assessment. The statement itself is a brief 36 paragraphs, running only about three-and-a-half pages. It is largely conclusory, rarely refers to the record, and provides no citations to evidence that would contradict Spitz's factual portrayal of vesting, participation rights, or Plan termination. We therefore affirm the district judge's decision on these points.

### C. *Attorneys' Fees and Costs: Cross–Appeal*

■ Spitz's complaint clearly indicates that he was suing under § 502(a)(3) of ERISA, § 1132(a)(3), but the district court thought that this was not enough of a link to ERISA to give rise to a right to attorneys' fees and costs under that statute. The court ruled instead that Spitz's decision to seek a declaratory judgment meant that his suit really arose under general federal question jurisdiction, 28 U.S.C. § 1331, and the Declaratory Judgment Act. This meant, the court believed, that Spitz was not entitled to an award of fees and costs as a matter of law.

This court, along with others, has characterized suits by fiduciaries under ERISA for declaratory judgments, injunctions, and restitution as actions in pursuit of "appropriate equitable remedies" under the statute. See, *e.g., Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co.,* 57 F.3d 608, 615 (7th Cir.1995); *Winstead v. J.C. Penney Co.,* 933 F.2d 576, 580 (7th Cir.1991); *Heller v. Fortis Benefits Ins. Co.,* 142 F.3d 487, 494–95 (D.C.Cir.1998). Under the Supreme Court's decision in *Mertens v. Hewitt Assoc.,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), a suit for compensatory damages would not fall within the "equitable remedies" authorized by ERISA, but we do not understand Spitz to be seeking that kind of relief. The *Mertens* opinion specifically recognized that "the 'equitable relief' awardable under § 502(a)(5) includes restitution of ill-gotten plan assets or profits...." 508 U.S. at 260, 113 S.Ct. 2063. We do not find the Ninth Circuit's earlier decision in *Transamerica Occidental Insurance Co. v. DiGregorio,* 811 F.2d 1249 (9th Cir.1987), which held that suits seeking a declaration of rights based on plan interpretation should be characterized as "legal" for these purposes, to be consistent with either *Mertens* or this court's later rulings in *Heller* and *Winstead.* In fact, it appears that the Ninth Circuit itself would not follow the extreme implications of the *Transamerica* holding in a case like ours. See *FMC Med. Plan v. Owens,* 122 F.3d 1258, 1260–61 (9th Cir.1997).

Because Spitz's suit was one under ERISA for appropriate equitable remedies, the district court should on remand consider whether Spitz is entitled to costs and attorneys' fees under § 1132(g)(1). This is a matter that lies within the discretion of the district court, which can take up the question once the loan matter we are remanding has also been resolved.

The judgment of the district court is Affirmed in part and Reversed and Remanded in part for further proceedings.

Each side shall bear its own costs on appeal.