In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2839

GLORIA J. McCASKILL,

Plaintiff-Appellant,

v.

SCI MANAGEMENT CORPORATION, SCI ILLINOIS
SERVICES, INCORPORATED, doing business as
EVERGREEN CEMETERY, SAM SMITH, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 1543--Suzanne B. Conlon, Judge.

ARGUED JANUARY 26, 2001--DECIDED April 4, 2002

Before BAUER, MANION, and ROVNER, Circuit
Judges.

ROVNER, Circuit Judge.  Gloria McCaskill
filed suit in federal court against SCI
Management Corporation, Evergreen
Cemetery, Sam Smith, and Patrick Comer
(collectively "SCI") alleging that she
was terminated from her position at SCI
in violation of Title VII, 42 U.S.C. sec.
2000e et seq. She further alleges denial
of her contract rights in violation of 42
U.S.C. sec. 1981, violation of the
Illinois Wage Payment and Collection Act,
820 ILS 115/1 et seq., and tortious
interference with contract. The facts
underlying those claims are irrelevant to
the issues on appeal, but essentially
involve allegations that McCaskill
forwarded complaints of sexual harassment
from her subordinates to her supervisor,
who was the alleged harasser, and to the
general manager, and that she was denied
compensation owed to her and eventually
terminated as a result.

SCI moved to dismiss the complaint and
compel arbitration pursuant to the
Federal Arbitration Act ("FAA"), 9 U.S.C.
sec. 1 et seq., and the Illinois Uniform
Arbitration Act ("IUAA"), 710 ILCS 5/2 et
seq. SCI asserts that McCaskill signed an
agreement providing that all employment

disputes shall be resolved through binding arbitration. Although acknowledging the applicability of the arbitration provision, McCaskill asserts that the arbitration agreement is not enforceable because it prevents her from fully and effectively vindicating her Title VII rights. She grounds this argument in a provision in the arbitration agreement which (1) requires each party to pay its own costs and attorneys' fees regardless of the outcome and (2) mandates that each party shall pay one-half of the compensation to be paid to the arbitrator as well as one-half of any other costs of arbitration. Because we agree that the attorney's fee provision renders the agreement unenforceable in this Title VII action, we need not consider the argument regarding the costs. We note that the parties had initially challenged the ability of this court to hear this case, with SCI arguing that this court lacked jurisdiction over the district court's order compelling arbitration based on the distinction between an "embedded" and an "independent" proceeding. Since that time, however, the Supreme Court resolved the matter in Green Tree Financial Corp.- Alabama v. Randolph, 531 U.S. 79 (2000), rejecting the embedded/independent distinction. At oral argument, the parties agreed that the jurisdictional issue is resolved by Green Tree.

The dissent, however, raises a distinct challenge to this court's jurisdiction, arguing that the district court did not actually dismiss the case, and that we must remand in order for the court to determine whether to dismiss or stay the proceeding in compelling arbitration. We certainly agree with the dissent that the district court should have made clear its intent to dismiss this case, and that jurisdiction hinges on whether the case was in fact dismissed. A remand in this case, however, is pointless because all parties agree that the district court dismissed the case. The appellees asked the court to compel arbitration and dismiss the case, and no party requested that the case be stayed. Accordingly, the court could not have intended to grant a stay; in compelling arbitration, it could only have dismissed the case. The parties agree that the case is dismissed, and therefore there seems little point in a remand. Where the intent of the court to

dismiss the case is clear, we have appellate jurisdiction. See Kaplan v. Shure Bros., Inc., 153 F.3d 413, 417 (7th Cir. 1998) (appellate court had jurisdiction even though minute order stated that case was dismissed without prejudice, where record read as a whole evidenced clear intent to end the entire case); Spitz v. Tepfer, 171 F.3d 443, 447-48 (7th Cir. 1999) (finding jurisdiction even though district court order granting summary judgment did not mention the injunction request, where plaintiff failed to pursue injunctive relief and "tenor of summary judgment opinion reflects the trial court's intent to dispose of all the issues in the lawsuit"; court's failure to explicitly address the injunction request "is the sort of technical defect that does not upset the order's finality, for it is clear that the court implicitly found against Spitz on this claim.").

The dissent cites ITOFCA, Inc. v. MegaTrans Logistics, Inc., 235 F.3d 360, 363 (7th Cir. 2000), for the proposition that parties cannot agree to jurisdiction, and an attorney's assertion at oral argument cannot create appellate jurisdiction. The case, however, recognizes that such representations can indeed determine appellate jurisdiction. In that case, the court was deprived of appellate jurisdiction because counterclaims had been dismissed "without prejudice," and thus could be refiled at any time. The court refused to find appellate jurisdiction based on the parties' mere representation that such jurisdiction existed, because it was inconsistent with the law. Id. at 363. The ITOFCA panel further stated, however, that it asked MegaTrans' attorneys at oral argument if they would represent to the court that MegaTrans would not refile the counterclaims. Id. at 365. The court stated that "[h]ad MegaTrans done so, we could have treated the district court's dismissal of the counterclaims as having been with prejudice, thus winding up the litigation and eliminating the bar to our jurisdiction." Id. Because MegaTrans was unwilling to so represent, we lacked appellate jurisdiction. Id. ITOFCA thus establishes that the representations by the parties can indeed impact our determination of appellate jurisdictions. Here, the parties agree that the case is dismissed, and the record supports that

representation. Given that no request for a stay was before it, the court could not have intended a stay rather than a dismissal Accordingly, we have appellate jurisdiction and turn to the validity of the arbitration agreement.

The arbitration agreement at issue here provides for the arbitration of a number of employment-related disputes, including those based on harassment or discrimination. It excludes other types of claims likely to be brought by SCI, such as disputes related to noncompetition or confidentiality agreements, and "any claim by the Company against the Employee which is based upon fraud, theft or other dishonest conduct of employee." Agreement para. 2. The arbitration agreement further specifies as follows:

Each party may retain legal counsel and shall pay its own costs and attorneys' fees, regardless of the outcome of the arbitration. Each party shall pay one-half of the compensation to be paid to the arbitrator(s), as well as one-half of any other costs relating to the administration of the arbitration proceeding (e.g. room rental, court reporter, etc.).

Agreement, para. 4. Some courts have refused to enforce arbitration agreements which mandate that the parties each pay half the costs of arbitration, while others have considered whether the cost-shifting provision renders the arbitration proceedings inaccessible for that individual. See, e.g., Green Tree, 531 U.S. 79; Brown v. Wheat First Securities, Inc., 257 F.3d 821 (D.C. Cir. 2001); Bradford v. Rockwell Semiconductor Systems, Inc., 238 F.3d 549 (4th Cir. 2001); Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, 170 F.3d 1 (1st Cir. 1999); Koveleskie v. SBC Capital Markets, Inc., 167 F.3d 361 (7th Cir. 1999); Shankle v. B-G Maintenance Management of Colorado, Inc., 163 F.3d 1230 (10th Cir. 1999); Cole v. Burns International Security Services, Inc., 105 F.3d 1465 (D.C. Cir. 1997). We need not address the issue here, however, because the attorney's fees provision renders the agreement unenforceable.

In Gilmer v. Interstate Johnson Lane Corp., 500 U.S. 20, 26 (1991), the

Supreme Court held that claims under fed eral statutes may be appropriate for arbitration as long as the litigant may effectively vindicate her statutory cause of action in the arbitral forum, and the statute will continue to serve its remedial and deterrent purposes. Williams v. Cigna Financial Advisors Inc., 197 F.3d 752, 763 (5th Cir. 1999). See also Equal Employment Opportunity Commission v. Waffle House, ___ U.S. ___, 122 S. Ct. 754, 761 (2002) (narrowly construing impact of arbitration agreement to hold that the existence of an arbitration agreement between private parties does not affect the EEOC's right to seek all remedies). One of the remedies provided by Title VII is that attorney's fees may be awarded to a prevailing plaintiff, 42 U.S.C. sec. 2000e-5(k), and we noted in Dunning v. Simmons Airlines, Inc., 62 F.3d 863, 872 (7th Cir. 1995), that aprevailing party should ordinarily recover attorney's fee absent special circumstances rendering such an award unjust. In Dunning, we emphasized the importance of the fees provision to the purposes of Title VII:

Attorney's fees in Title VII litigation are not limited to a proportion of the monetary damages assessed in the case because, as Congress has recognized, a plaintiff in any civil rights suit acts "not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest importance." [citations omitted] . . . . A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting sec. 1988. Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.

Id. at 873 n.13. The right to attorney's fees therefore is integral to the purposes of the statute and often is central to the ability of persons to seek

redress from violations of Title VII. In recognition of the importance of the attorney's fees provisions to the remedial and deterrent effect of Title VII, counsel for SCI conceded at oral argument that if we construe the arbitration agreement as not allowing the arbitrator to award attorney's fees, then the agreement deprives the plaintiff of remedies under Title VII and is unenforceable.

The attorney's fees provision in the arbitration agreement quite plainly does just that. It mandates that each party shall pay its own attorney's fees regardless of the outcome of the arbitration. SCI attempts to avoid that plain language with a novel interpretation. According to SCI, the provision regulates only what McCaskill is responsible for paying, not what she may be awarded, and thus it is possible for an arbitrator to award her attorneys' fees consistent with the arbitration agreement, as long as she uses that award to pay her attorneys. That defies the plain meaning of the words. SCI has identified no other context in which a court would hold that a provision requiring a person to pay her own attorney's fees actually means the opposing party may be required to pay the fees to her, and then she must pay her own attorney. The provision obviously means that neither party can be required to pay the attorney's fees of the other party, either directly or through the straw-man approach advocated by SCI.

In fact, the Ninth Circuit reached that conclusion regarding a similar clause in Graham Oil Co. v. ARCO Products Co., a Div. of Atlantic Richfield Co., 43 F.3d 1244 (9th Cir. 1994). The arbitration agreement in Graham Oil was part of a distributor agreement with a franchisee, and provided that each party would bear its own attorney's fees. Id. at 1247. The court recognized that franchisees may agree to an arbitral forum for resolving statutory disputes, but stated that they may not be forced "to surrender the statutorily-mandated rights and benefits that Congress intended them to possess." Id. The court held that the attorney's fees clause purported to forfeit the statutorily-mandated right to recover attorney's fees provided under the Petroleum Marketing Practices Act (PMPA).

Id. It further noted that the right to attorney's fees was important to the effectuation of the PMPA's policies, specifically the purpose of deterring a franchiser from improperly contesting meritorious claims, and accordingly held that the clause contravened the PMPA. Id. at 1248. The court then held that the attorney's fees clause, as well as two other contravening clauses, were not severable from the arbitration agreement as a whole--a claim not even raised in this case and therefore not before us here.

Similar to Graham Oil, the clause here purports to forfeit McCaskill's statutory right to attorney's fees, a remedy that we have already recognized is essential to fulfill the remedial and deterrent functions of Title VII. Because the provision prevents her from effectively vindicating her rights in the arbitral forum by preemptively denying her remedies authorized by Title VII, the arbitration agreement is unenforceable. The district court's order compelling arbitration is REVERSED, and the case REMANDED for further proceedings consistent with this opinion.

MANION, Circuit Judge, dissenting. The court has concluded that the arbitration clause is unenforceable because it preempts certain rights McCaskill has under Title VII. At some point this could be a valid issue on appeal, but not yet. Although the district court granted the SCI's motion to compel arbitration, it neither dismissed nor stayed the pending action. The court acknowledges that the parties initially challenged appellate jurisdiction, and notes that the issue has been resolved by the Supreme Court's decision in Green Tree Fin. Corp. - Alabama, et al. v. Randolph, 531 U.S. 79 (2000). Reasoning that the district court "could only have dismissed the case," it concludes that we have jurisdiction to review a district court's decision that dismisses a case after ordering the parties to arbitrate. It then proceeds to address the merits of this case. After carefully reviewing the district court's opinion, it is clear to me that the district court did not dismiss this case, and therefore its order is not a final

decision under Green Tree and 28 U.S.C. sec. 1291. I, therefore, respectfully dissent.

Longstanding federal policy strongly favors arbitration. Green Tree, 531 U.S. at 91 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). Section 16 of the Federal Arbitration Act ("FAA") governs appellate review of arbitration orders. It provides, in relevant part, that an appeal may be taken from "a final decision with respect to an arbitration . . . ." 9 U.S.C. sec. 16(a)(3). In addition, an appeal may not be taken from an interlocutory order "compelling arbitration . . . ." 9 U.S.C. sec. 16(b)(3). The FAA does not define the term "final decision." In Green Tree, the Supreme Court interpreted the phrase according to its well-established, plain meaning, i.e., a decision which "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." 531 U.S. at 86 (citations omitted). In addressing a district court's order compelling arbitration and dismissing the case with prejudice, the Supreme Court held that such an order is a "final decision" and thus is immediately appealable pursuant to the FAA. Id. The Court noted, however, that if a district court enters a stay instead of a dismissal, that order is not a final, appealable decision under the FAA. Id. at 87, n.2./1 See Salim Oleochemicals v. M/V Shropshire, 278 F.3d 90 (2d Cir. 2002) (order compelling arbitration and dismissing without prejudice was an appealable decision under the FAA); ATAC Corp. v. Arthur Treacher's, Inc., 280 F.3d 1091 (6th Cir. 2002) (order staying proceedings pending arbitration not appealable under the FAA); Interactive Flight Tech., Inc. v. Swissair Swiss Air Transp. Co., Ltd., 249 F.3d 1177 (9th Cir. 2001) (order compelling arbitration and dismissing case without prejudice appealable under the FAA); Employers Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316 (11th Cir. 2001) (order compelling arbitration and dismissing the case deemed appealable under the FAA).

Here, notwithstanding the court's assumption to the contrary, the district court did not actually dismiss the case. The court maintains that a remand in this

case is "pointless because all parties agree that the district court dismissed the case." See ante at 3. But the district court did not dismiss the case. Nevertheless, the court concludes thatbecause the appellees requested the district court to compel arbitration and dismiss the case, and because neither party requested that the case be stayed, "the [district] court could not have intended to grant a stay; in compelling arbitration, it could only have dismissed the case." Id. Not so. The district court clearly could have ordered a stay. 9 U.S.C. sec. 3. Yet, this court's conclusion appears to suggest that, notwithstanding the absence of any language in the district court's opinion indicating an intention to dismiss the suit, we, as the reviewing court, should infer the district court's intent to dismiss solely because a litigant requested that such an action be taken. Given the Supreme Court's recent (and heightened) sensitivity to jurisdictional issues, it is inappropriate to assume the finality of a district court decision when there is no basis for doing so. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (holding that "'[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'") (citation omitted).

   Furthermore, neither Kaplan v. Shure Bros., Inc., 153 F.3d 413 (7th Cir. 1998), nor Spitz v. Tepfer, 171 F.3d 443 (7th Cir. 1999), supports the court's decision to assume jurisdiction in this case. These cases are entirely distinguishable from the situation before us on appeal. In Kaplan and Spitz, the district courts' opinions provided some basis for inferring dismissals in those cases. See Kaplan, 153 F.3d at 417 (no amendment to complaint possible); Spitz, 171 F.3d at 447-48 (counterclaim dismissed, other issues final). In this case, there is nothing in the district court's opinion that would allow us to infer that the court intended to dismiss the case. SCI filed a motion to compel arbitration and to dismiss the case. The district court's order, however, merely compelled arbitration. The order does not address, in any manner whatsoever, SCI's

request for a dismissal of the case. While it is true that SCI's attorney stated at oral argument that the district court's opinion effectively dismissed the case, it is well settled that parties cannot agree to jurisdiction, nor can an attorney's assertion at oral argument create appellate jurisdiction. See ITOFCA, Inc. v. MegaTrans Logistics, Inc., 235 F.3d 360, 363 (7th Cir. 2000). Rather, we have consistently held that "[i]t is our threshold and independent obligation to make that determination even [when] both parties agreeably [consider an] order to be final and appealable." ITOFCA, 235 F.3d at 363 (citations omitted).

Finally, the court's interpretation of our decision in ITOFCA is incomplete. As we indicated in that case, litigants can impact this court's determination of appellate jurisdiction by representing to the court that they would not refile their claims (thereby effecting a voluntary dismissal with prejudice). That decision to forego further proceedings is entirely within their control and discretion (an agreement the ITOFCA litigants refused to make). Of course an agreement before this court not to refile would be irrevocable once relied upon in the appellate opinion. A litigant's representations are irrelevant, however, when an appellate court is seeking to determine whether a district court dismissed a lawsuit, an action that is solely within the control and discretion of that court.

Without a dismissal of the underlying case, the district court's order compelling arbitration remains an interlocutory order under Section 16(b)(3) of the FAA. Under Green Tree, we are not permitted to exercise jurisdiction over this case until the district court enters a dismissal. Of course, as previously noted, the district court may also grant a stay under Section 3 of the FAA, in which case we would not have jurisdiction since it would not be appealable. 9 U.S.C. sec.16(b)(1); Green Tree, 531 U.S. at 87 n.2./2 In any case, it is incumbent upon district courts to fully address and clearly dispose of a motion filed by a litigant for the parties' benefit, to conserve its own judicial resources and to aid this court on review. See Salim Oleochemicals,

278 F.3d at 93 (urging "district courts in these circumstances to be as clear as possible about whether they truly intend to dismiss an action or mean to grant a stay . . . or whether they mean to do something else entirely."). See also Dustrol, Inc. v. Champagne-Webber, Inc., 2002 WL 122500, * 4 (N.D. Tex. Jan. 24, 2002) (citing Green Tree, district court clearly states that "the court dismisses this case because there are no longer any unadjudicated claims presently before the court.").

Accordingly, I conclude that we lack appellate jurisdiction over this case and would have therefore remanded the case back to the district court for further disposition or clarification of its order. Without jurisdiction, we may not proceed to opine on the validity of the arbitration agreement.

FOOTNOTES

/1 In resolving questions of finality, we have asked whether an appeal is from an "embedded" (those involving a request for arbitration and other relief) or "independent" (a request to order arbitration solely) proceeding. Previously, an order compelling arbitration in an independent proceeding was appealable, whereas one in an embedded proceeding was interlocutory. See Napleton v. General Motors Corp., 138 F.3d 1209, 1212 (7th Cir. 1998). The Supreme Court, however, rejected this distinction in Green Tree, 531 U.S. at 88.

/2 I pause to take note of an issue left unresolved by the Supreme Court in Green Tree, i.e., whether a district court may dismiss a case under the FAA at all. Green Tree, 531 U.S. at 87 n.2 (declining to address whether district court should have entered a stay rather than a dismissal). The plain language of the FAA gives a court only the power to grant a stay. See 9 U.S.C. sec. 3. In contrast, nothing in the FAA refers to the district court's power to dismiss a case. See also Stephen H. McClain, Under a New Supreme Court Decision, Litigants Seeking Arbitration of a Dispute can Control the Timing of an Appeal, 48-Aug. Fed. Law. 22, 25 (2001) (noting that, during oral argument of Green Tree, some of the justices questioned whether or not a stay was required under the FAA). This court has also questioned whether there is any statutory authority for dismissing a case when compelling arbitration. See Kroll v. Doctor's Assoc., Inc., 3 F.3d 1167, 1172 (7th Cir. 1993). The uncertainty surrounding a district court's ability, or authority, to

dismiss a case under the FAA, is yet another reason to decline jurisdiction over this appeal.