# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

Nos. 00-1085 and 00-3674

FREDERIC A. FENSTER and NOLAN S. FRANK,

*Plaintiffs-Appellants,*

*v.*

TEPFER & SPITZ, LTD., RONALD O. SPITZ, DAWN C.
MAGLIOLA, and TEPFER & SPITZ, LTD. 401(K) PROFIT
SHARING PLAN and TRUST, et al.,

*Defendants-Appellees.*

———————

Nos. 00-3037, 00-3673 and 00-3991

RONALD O. SPITZ, AS A TRUSTEE OF THE TEPFER & SPITZ,
LTD. 401(K) PROFIT SHARING PLAN & TRUST,

*Plaintiff-Appellee,*

*v.*

ARTHUR H. TEPFER, FREDERIC A. FENSTER,
and NOLAN S. FRANK,

*Defendants-Appellants.*

———————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 97 C 7093 & 96 C 5844—**Harry D. Leinenweber**, *Judge.*

———————

ARGUED DECEMBER 7, 2001—DECIDED AUGUST 30, 2002

———————

Before FLAUM, *Chief Judge*, MANION, and DIANE P. WOOD,
*Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.*   This is the second time this court has had to consider the fractious battle between two former business partners over their firm's pension plan. Once again, Ronald Spitz, the owner of a consulting firm and trustee of a 401(k) plan, is before this court in an Employee Retirement Income Security Act (ERISA) action against his former co-owner, Arthur Tepfer, and two of the firm's employees, Frederic Fenster and Nolan Frank. The district court has again granted summary judgment in Spitz's favor on all claims except for one, and it has awarded Spitz attorneys' fees, collectable jointly from Tepfer, Frank and Fenster. This time, we affirm the district court's judgment.[1]

# I

We will assume familiarity with the account set forth in our prior opinion in this matter and will repeat only what is necessary for this appeal. See *Spitz v. Tepfer*, 171 F.3d 443 (7th Cir. 1999) (*Spitz I*). Spitz and Tepfer were equal co-owners of a retirement-plan-consulting business, Tepfer & Spitz, Ltd. (T&S). They were its sole directors and officers: Spitz was president and Tepfer was secretary. In January 1991, T&S established a 401(k) profit-sharing plan (the Plan). Under the Plan, an employee could not vest until she had completed six years of service with T&S.

On June 9, 1995, Tepfer left T&S, leaving quite a wake behind him. In addition to filing an unsuccessful suit in

---

[1]  It appears that on September 13, 2000, more or less contemporaneously with the orders being appealed here, Tepfer filed for bankruptcy. On December 6, 2000, he moved for relief from the automatic stay imposed by the Bankruptcy Code, 11 U.S.C. § 362(d), for purposes of pursuing this appeal. The bankruptcy court granted that motion on December 12, 2000. Tepfer's appeal is thus properly before us; Fenster's and Frank's appeals are naturally unaffected by Tepfer's bankruptcy.

state court to force the dissolution of T&S, Tepfer formed another corporation, Tepfer Consulting Group, Ltd., where he served as president and sole shareholder. Fenster and Frank also left T&S to become employees of Tepfer Consulting Group. In addition, without telling Spitz, Tepfer executed a document entitled the Fourth Plan Amendment. This document was never adopted, ratified, or approved by the T&S Board of Directors. It generously provided that all participants in the T&S Plan would become 100% vested by January 1, 1995, and that all employees were guaranteed to receive their allocation of the T&S annual contribution to the Plan, even if they were not actively employed with T&S on the last day of the year. Finally, and most importantly for this appeal, Tepfer withdrew $48,000 on June 2, 1995, from the Plan without Spitz's knowledge, pursuant to another mysterious document entitled "Participant Loan Program." No one apart from Tepfer himself approved the incorporation of the Participant Loan Program into the Plan, nor did anyone authorize the alleged loan he took out under that alleged program.

These actions did not endear Tepfer to Spitz. To the contrary, on September 12, 1996, Spitz filed an action in the district court, requesting among other things that the court declare that the Fourth Plan Amendment and the Participant Loan Program were invalid. Spitz also sought an order requiring Tepfer immediately to repay the loan to the T&S Plan and a judgment declaring that Tepfer, Fenster and Frank were not fully vested in the T&S Plan and therefore not entitled to contributions to their 401(k) accounts for 1995. Fenster and Frank initiated a separate action against Spitz and T&S, claiming that T&S violated ERISA's information requirements. The district court consolidated the two cases (dubbing them the "Spitz" litigation and the "Fenster" litigation for convenience), granted summary judgment in favor of Spitz in both, and denied both sides attorneys' fees and costs.

This court affirmed the district court in part and reversed and remanded in part for further findings regarding the existence and scope of the loan program. See *Spitz I*. We also found that Spitz would be entitled to attorneys' fees under ERISA should he prevail again.

On remand, Spitz sought two things: first, a finding that the Plan administrator (basically, Spitz himself by that time) did not abuse his discretion when he determined that the Participant Loan Program was invalid and second, an order requiring Tepfer immediately to repay the loan with interest. The district court again granted summary judgment in Spitz's favor. With respect to the Fenster case, the district court ruled in favor of Spitz on all matters with one exception. It decided *sua sponte* to grant summary judgment for the Fenster plaintiffs on the claim that T&S had violated ERISA by failing to respond within 30 days to Fenster's and Frank's request for a benefits statement. This was a largely symbolic victory, however, as the court also decided that the violation was so trivial that penalties would not be assessed. Finally, the district court awarded Spitz $67,406.90 in attorneys' fees, costs, and litigation expenses. The attorneys' fees portion of this sum, the court concluded, could be offset against Tepfer's pension benefits pursuant to 29 U.S.C. § 1056(d)(4)(a)(ii). Tepfer, Fenster and Frank appeal the district court's orders.

## II

Before we proceed to the merits of this appeal, we pause briefly to note that our appellate jurisdiction is now secure. Initially, there was a finality problem because Tepfer filed his notice of appeal prior to the entry of a final order on his motion for reconsideration. Recognizing this error, however, he has since requested and received a final order from the district court. As this was

only a technical defect that has been cured, we have jurisdiction to review the district court's judgment. See *Spitz I*, 171 F.3d at 448.

### A.  Tepfer's Loan

In *Spitz I*, this court held that genuine issues of fact remained regarding the scope of the loan program that were critical to the question of whether Tepfer properly applied for the loan. 171 F.3d at 449. On remand, Tepfer tried to show that his loan and the Participant Loan Program were validly executed pursuant to § 7.4 of the Plan. Section 7.4 states that loans "shall be made pursuant to a Participant loan program . . . . Such Participant loan program shall be contained in a separate written document which, when properly executed, is hereby incorporated by reference and made a part of the Plan."

Tepfer's point is fairly simple: the only document looking like a § 7.4 loan program was his Participant Loan Program; *ergo*, his loan must be valid. The district court found otherwise. Tepfer wants us to review that decision *de novo,* which is the standard that applies if an ERISA plan does not give discretionary authority to the administrator to construe its terms. See *O'Reilly v. Hartford Life & Accident Ins. Co.*, 272 F.3d 955, 959 (7th Cir. 2001). It is well established, however, that if the administrator has such discretion (as this one did), we look only to see whether the administrator's determination is arbitrary or capricious. *Id.* As this court noted in *Spitz I*, 171 F.3d at 449, "Spitz is the only person left at T&S who matters" when interpreting the Plan as the only remaining administrator at T&S. He found the Participant Loan Program was invalid because it was unsigned and never approved by the Board of Directors. We agree with the district court that this determination was neither arbitrary nor capricious.

Tepfer disagrees, and first suggests that remaining disputed issues of material fact should have prevented the district court from ruling against him on summary judgment. Specifically, he points to two unresolved issues: when the program was executed, and by whom. But the district court found that these facts were not material, in light of the reason why the administrator made his determination. The document was unsigned, which Tepfer does not contest. On that basis alone the administrator was not arbitrary in determining that the Participant Loan Program was invalid. Tepfer points to nothing in the record that suggests that the district court was required to find that this Plan tolerated such unsigned programs.

Tepfer next claims that the Participant Loan Program *must* be valid, or else there would be a fatal inconsistency between the Summary Plan Description (SPD) and the Plan itself. The SPD is a plain-language summary of the Plan for the use of the participating employees. The Plan's SPD describes a program for securing loans, and Tepfer contends that the Participant Loan Program must be valid because it is the only loan program available to participants. Although it is true that when an SPD contradicts a profit-sharing plan, the SPD controls, *Spitz I*, 171 F.3d at 448. This well-established proposition is beside the point. The question is whether the particular loan program Tepfer tried to use was validly created under the Plan. As the district court noted, participants are entitled to apply for loans under the Plan whether or not any given loan program passes muster. Just because Tepfer was eligible for a loan as a participant does not mean that his Participant Loan Program is the tool by which participants may secure loans.

In fact, the SPD provided an alternate route for loans that did not involve use of a specific participant loan program: applicants could obtain approval for a loan if an

administrator reviewed the application and a majority of the Plan's trustees approved it. Unfortunately, this does not help Tepfer, because the undisputed facts showed that he did not seek approval from the majority of the trustees prior to taking out the $48,000 loan. As an administrator at the time (in his capacity as an officer and employee of T&S), Tepfer arguably could have approved the loan, but he still ignored the SPD's instructions requiring trustee approval. In his brief, Tepfer suggested that trustee approval was not really a requirement under the SPD, but we agree with the district court that the plain language of the document does not support this position. Even though the SPD does not define the term "trustee," the Plan describes a Trustee as "the majority of all trustees." §§ 9.4; 7.1. The SPD then goes on to say the following:

> You may apply to the Administrator for a loan from the Plan. . . . The Administrator *will* inform the Trustee that you qualify. The Trustee may then review the Administrator's determination and make a loan to you if it is a prudent investment for the Plan. (Emphasis added)

Nothing in this language remotely suggests that the step of informing the trustees and obtaining their approval can be omitted. Indeed, it is the Trustee who ultimately makes the loan, if it is prudent to do so.

At oral argument, counsel for Tepfer acknowledged that Tepfer should have informed a Trustee of the loan; but, he went on, the omission was immaterial because the loan inevitably would have been approved. We do not know what would have happened, of course. It is possible that Tepfer's loan would have been approved, but the fact is that it never was. ERISA requires formal process, see *McNab v. General Motors Corp.*, 162 F.3d 959, 961 (7th Cir. 1998), and no amount of speculation can erase Tepfer's disregard of the rules outlined by the SPD.

Finally, we reject Tepfer's contention that a quest for loan approval would have been futile because he would have needed Spitz's approval (since Spitz was a trustee, and Spitz was not about to give it). We have heard Tepfer's concern before about Spitz's "conflict of interest." *Spitz*, 171 F.3d at 449. Although Tepfer still insists Spitz is inherently biased and had no reason to be fair in dealing with Tepfer, this court found that "[t]he mere fact that Spitz has a potential conflict of interest between his role as owner of T&S and his role as plan administrator is not enough by itself to dismiss his interpretation of the Plan." *Id.*; see also *Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1020 (7th Cir. 1998). Despite our discussion in *Spitz I*, Tepfer still offers no specific evidence of Spitz's bias or abuse in this or any other determination he made as Plan administrator or as a trustee.

The Participant Loan Program and Tepfer's loan were improper under both the SPD and the Plan. Tepfer must pay the final $100 of the $48,000 deposited in the registry of the district court to Spitz along with any interest accrued during this appeal.

### B.  Statutory Penalties

Fenster and Frank challenge the district court's finding that T&S's violation of 29 U.S.C. § 1024(b)(4)—through a seven-day delay in furnishing information—did not warrant any penalty. Before addressing the merits of Fenster's and Frank's argument, we note that they are incorrect to suggest that our review of this matter is *de novo*. It is within the district court's discretion to determine whether to award statutory penalties, and the existence of that discretion means that our review is deferential. *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th Cir. 1993); *Harsch v. Eisenberg*, 956 F.2d 651,

662 (7th Cir. 1992). A fine is not mandatory even upon a finding of a violation of § 1024(b)(4). *Ames v. American Nat'l Can Co.*, 170 F.3d 751, 759-60 (7th Cir. 1999).

No one doubts that the district court had the power to hold the administrator "personally liable to such participant or beneficiary in the amount of up to $100 a day" under 29 U.S.C. § 1132(c) for the seven-day delay. The question, however, is whether it was an abuse of discretion to refrain from exercising that power here. The district court reasonably determined that no penalty was required because T&S's failure to comply with the statute did not materially prejudice the defendants. See *Harsch*, 956 F.2d at 662. Although Fenster and Frank protest that no hearing was held on the issue, they have raised no factual dispute requiring a hearing. There was no reversible error either in the procedures the court used or in its conclusion.

### C. Termination

Fenster and Frank also argue the district court erred when it refused to consider whether the Plan was actually terminated. They take the position that it was terminated, because under the terms of § 6.4(c) of the Plan, that would make all of the participants, including themselves, fully vested. To begin with, this issue is remarkably close to one we resolved in *Spitz I*. Indeed Spitz argues that *Spitz I* precludes Fenster and Frank from even raising the issue. We will not go as far as to say that Fenster and Frank are barred by the law of the case from making the argument. The focus in *Spitz I* was on whether the district court used the proper vesting percentages and correctly allocated the 1995 T&S contribution; to the extent the subject came up, Plan termination was a peripheral matter. We therefore may consider Fenster's and Frank's argument that the Plan ended by its own terms.

Although ERISA imposes fiduciary duties on employers with respect to the management of plan assets, it does not require an employer to act in a fiduciary capacity when the employer abolishes or amends a benefits plan (or in this case declines to abolish a plan). *Senn v. United Dominion Indus., Inc.*, 951 F.2d 806, 817 (7th Cir. 1992). After considering Fenster's and Frank's argument that the Plan had self-terminated, the district court found that it had no authority to grant relief because T&S's failure formally to terminate the plan did not involve a fiduciary decision. *Buckley Dement, Inc. v. Travelers Plan Adm'rs of Ill., Inc.*, 39 F.3d 784, 790 (7th Cir. 1994); *Adams v. Avondale Indus., Inc.*, 905 F.2d 943 (6th Cir. 1990).

The district court may have slightly misunderstood the point Fenster and Frank were making, but in the end it makes no difference. They recognize that the act of termination is not a fiduciary one, but they argue that the Plan ended according to its own terms and that their rights automatically vested. The question of whether a plan has terminated under its own provisions is a question of contract interpretation. *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 311 (7th Cir. 1992). As we noted in our discussion of Tepfer's loan, the T&S Plan gives its administrator discretion to interpret its terms, and our review is therefore only to assess whether the determination here that the Plan was still in force is arbitrary and capricious. *Herzburger v. Standard Ins. Co.*, 205 F.3d 327, 329 (7th Cir. 2000).

The SPD provides in Part XI(2) that the Plan will terminate upon "a complete discontinuance of contributions by your Employer." Frank and Fenster point out that T&S is no longer contributing to the Plan, and that after December 31, 1995, T&S had no payroll, no new business, and a liquidation resolution. They also note that both Spitz and Tepfer have formed separate companies, and thus that there will not be any additional pension contributions. They reason that under the SPD, this must mean that the Plan

has terminated. Spitz, in his capacity as administrator, paints a different picture. He characterizes the status of the plan as a "suspension," rather than a cessation. Spitz maintains that the status of the company is "on hold" for now, while its primary focus is resolving this long-running litigation. Furthermore, Spitz adds, the company has changed not because it terminated all of its employees, but because the employees, including Fenster and Frank, voluntarily left T&S. *Cf. Anderson v. Emergency Medicine Assocs.*, 860 F.2d 987 (10th Cir. 1988) (partial termination did not occur when employees voluntarily quit). At this late stage of summary judgment, Frank and Fenster must do more than offer allegations and conclusory statements to support their argument that the Plan is terminated.

The record supports only the opposite conclusion, as the district court recognized as early as its 1997 opinion. Spitz, the Plan administrator, stated repeatedly that T&S was only suspended and that no decisions on the business's future could be made until the litigation ended. Future prospects for T&S include a merger, a new business under a new name, or even a continuation of the same business. Furthermore, despite Fenster's and Frank's arguments and Tepfer's attempts to dissolve T&S, it has survived. See *Tepfer v. Spitz*, Nos. 95 CH 2082 & 95 CH 11171, Circuit Court of Cook County, Chancery Division. Fenster and Frank have not shown that the Plan has terminated under its own terms, and, as the district court also found, this court does not have the authority to terminate the Plan. See *Buckley Dement, Inc.*, 39 F.3d at 790.

### D.  Attorneys' Fees

We also find that the district court did not err in awarding attorneys' fees to Spitz. Before we address the joint award, we respond briefly to Tepfer's argument that the award should not be offset from his Plan assets. Tepfer

did not argue that the district court's offset order violated ERISA's anti-alienation provision, 29 U.S.C. § 1056(d), until he filed his reply brief and his motion for reconsideration in the district court. This is too late. An argument introduced for the first time in a reply brief is waived. We therefore do not address this point further.

The district court did not abuse its discretion by holding Tepfer, Fenster, and Frank jointly and severally liable for the payment of attorneys' fees. When making its determination, the district court noted that Tepfer, Fenster and Frank had maintained the same legal positions throughout this litigation, had agreed to pay their attorney in proportion to their account balances, and were charged roughly the same amount by their attorneys. Whether Fenster and Frank had shown the same bad faith as Tepfer, the district court determined that "reducing the fee award so as to protect Fenster and Frank would only ease Tepfer's burden." We generally review the district court's award of attorneys' fees for an abuse of discretion because of the district court's "superior understanding of the litigation." *Jaffee v. Redmond*, 142 F.3d 409, 412-13 (7th Cir. 1998). In conducting this review, we ask the following question: "Was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 593 (7th Cir. 2000).

While we recognize that Tepfer argued some issues alone, and that Fenster and Frank filed a separate action that was consolidated with Spitz's suit, this is not a case where Fenster, Frank and Tepfer are truly strangers. Indeed, as the district court noted, they have maintained the same positions despite their separate status as trustee and beneficiaries and the separate, but consolidated, lawsuits. All three used the same attorney and cooperated with each other. In fact, in his deposition, Tepfer acknowledged that he agreed with Fenster and Frank to share the financial burdens of the litigation.

Moreover, all three appellants continuously argued positions that were not substantially justified; some positions bordered on frivolous. *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998). We are not persuaded by Tepfer's attempts to argue that he did not act in bad faith. Although Tepfer maintains that his loan was not a "blatantly illegal withdrawal from the plan," that is not the standard for awarding attorneys' fees. The parties were not substantially justified in maintaining this losing litigation position, and the district court's fee order was well within its discretion.

### III

The judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
