In the

# United States Court of Appeals
## For the Seventh Circuit

No. 00-2839

GLORIA J. MCCASKILL,

*Plaintiff-Appellant,*

*v.*

SCI MANAGEMENT CORPORATION,
SCI ILLINOIS SERVICES INCORPORATED,
doing business as EVERGREEN CEMETERY,
SAM SMITH, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 1543—**Suzanne B. Conlon**, *Judge.*

ARGUED JANUARY 26, 2001*—DECIDED AUGUST 5, 2002

Before BAUER, MANION, and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* Gloria J. McCaskill, an African-
American female, was employed at Evergreen Cemetery

---

* The panel issued an opinion on April 4, 2002, *McCaskill v.
SCI Management Corp.*, 285 F.3d 623 (7th Cir. 2002). The ap-
pellees then petitioned for rehearing, and a majority of the panel
voted to rehear the case, vacating the panel opinion. *McCaskill
v. SCI Management Corp.*, No. 00-2839, 2002 WL 1362232 (7th
Cir. Jun. 24, 2002). Because the issues in the case remained
the same, it was determined that no further argument was nec-
essary and the matter would be decided on the record. FED. R.
APP. P. 40(a)(4).

as a pre-need sales person. (Evergreen's parent company is SCI.) McCaskill's duties included selling funeral goods and services prior to death. She performed these tasks well and was quickly promoted to a management position. After being employed for one year, McCaskill was presented with a document, which included an arbitration provision, and was required to sign it as a condition of continued employment. The arbitration provision stated that disputes between employee and employer would be decided by binding arbitration. Also, among other things, the agreement stated that each party would bear his or her own legal fees and costs.

In 1999, McCaskill complained to management on behalf of several other female employees about the sexual harassment of the female employees by a male supervisor. McCaskill also complained about not receiving certain sales bonuses. Shortly thereafter, McCaskill's employment was terminated. McCaskill filed a complaint with the Equal Employment Opportunity Commission (EEOC) and received a right-to-sue letter. McCaskill then filed suit alleging violations of Title VII, 42 U.S.C. § 1981 and other employment related provisions of state law.

A. *Jurisdiction*

The first question we confront is whether there was a "final decision" over which we may exercise jurisdiction. Although the parties agree that the district court dismissed the case, we must conduct our own independent inquiry to determine if the order was final. *ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 235 F.3d 360, 363 (7th Cir. 2000). We pause to note that a district court should always make clear its intent to dismiss a case, particularly where dismissal will render an order appealable. *See Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir. 2002).

An appeal may be taken from a "final decision with respect to an arbitration", but not from an interlocutory order staying the action or "compelling arbitration". 9 U.S.C. §§ 16(a)(3), (b)(1), (b)(3). A dismissal without prejudice compelling arbitration is an appealable final decision. *Salim Oleochemicals*, 278 F.3d at 91; *see also Green Tree Financial Corp.-Alabama v. Randolph*, 513 U.S. 79, 88-89 (2000) (holding "that where, as here, the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of § 16(a)(3), and therefore appealable."). So we are left with the question of whether the "order plainly disposed of the entire case on the merits and left no part of it pending before the court." *Green Tree*, 513 U.S. at 86.

The defendants moved to dismiss the complaint and compel arbitration. The district court entered an order granting the defendants' motion to compel arbitration, but the order failed to state whether the case was also dismissed.

Since the district court failed to state in the order that the matter was dismissed, we look to the proceedings and rulings to determine if they evidence a clear intent to dismiss the matter. *See Kaplan v. Shure Bros., Inc.*, 153 F.3d 413, 417 (7th Cir. 1998) ("In this case, a review of the district court's orders convinces us that the court's dismissal of Kaplan's action on February 14, 1997 is an appealable order."); *Spitz v. Tepfer*, 171 F.3d 443, 447-48 (7th Cir. 1999) ("Moreover, the tenor of the summary judgment opinion reflects the trial court's intent to dispose of all the issues in the lawsuit . . . ."); *cf. ITOFCA, Inc.*, 235 F.3de at 365 ("Had MegaTrans done so ['represented to the Court it would not refile its counterclaims'], we could have treated the district court's dismissal of the counterclaims as having been with prejudice, thus winding up the litigation and eliminating the bar to our jurisdiction.").

There are a number of facts which, when taken together, demonstrate that the district court did, in fact, dismiss the matter without prejudice. First, there is the fact that the district court granted SCI's motion which actually requested the court to compel arbitration and dismiss the case. Second, SCI never requested a stay, and while the district court could have granted a stay, it did not explicitly do so. *Cf. Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 n.6 (11th Cir. 2001) ("Although the district court did not specify whether the dismissal was with or without prejudice, the arbitration order clearly disposed of the entire case on the merits and left no part of it pending before the court. Moreover, the district court could have, but did not, stay the case pending arbitration."). Third, McCaskill agrees the court dismissed the case. *See JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 776-77 (7th Cir. 1999) ("But when we raised this point at argument, the plaintiff's lawyer quickly agreed that we could treat the dismissal of the two claims as having been with prejudice, thus winding up the litigation and eliminating the bar to our jurisdiction."); *Health Cost Controls of Illinois, Inc. v Washington*, 187 F.3d 703, 708-09 (7th Cir. 1999) ("The parties having thus removed the ambiguity in the district court's judgment, that judgment is appealable."). Finally, the district court, quoting another court, ended the opinion with the comment that McCaskill could appeal "subsequent" determinations by the arbitrator. The quotation regarding subsequent appeals clearly shows the court felt judicial review was inappropriate at this time, but the court was noting that McCaskill could seek subsequent judicial review because it was implicitly dismissing the case *without prejudice*.

When considered as a whole, the "tenor" of the proceedings show that the district court regarded the case dismissed because there was nothing left to decide. *Cf. CPR*

*(USA) Inc. v. Spray*, 187 F.3d 245, 253 (2d Cir. 1999) (holding that "if the district court, having ordered the parties to arbitrate, has no independent substantive issue left before it—only issues relating to the validity of the arbitrator's award—then the order compelling arbitration is, effectively, a final order and an immediate appeal will be proper."). Therefore, we conclude that a final decision was entered by the district court, and we have jurisdiction to hear the appeal.

B. *Arbitration*

Although a whole host of claims were alleged in the complaint and subject to dispute, the proceedings have narrowed the issues down to one, the attorney's fees clause in the arbitration agreement.[1] The provision at issue specifies: "Each party may retain legal counsel and shall pay its own costs and attorneys' fees, regardless of the outcome of the arbitration." The plain terms of the phrase clearly prohibit recovery of attorney's fees regardless of the result or the type of action filed. McCaskill's substantive objection to the provision is that it limits her ability to effectively vindicate her rights under Title VII. At oral argument, SCI conceded that the agreement is unenforceable if construed to limit McCaskill's ability to recover attorney's fees (provided she prevails) under Title VII.

---

[1] The main issue in this case was not well presented, as SCI has waived the intertwined issues of severability and construction of arbitration agreements by the arbitrator and may not now raise them on rehearing. *See International Broth. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO v. Local Lodge D354*, 897 F.2d 1400, 1409 (7th Cir. 1990) (discussing the purpose of rehearings); *see also HM Holdings, Inc. v. Rankin,* 72 F.3d 562, 563 (7th Cir. 1995) (per curiam) (discussing the purpose of rehearing en banc).

The agreement clearly bars the plaintiff's ability to recover any attorney's fees, and because SCI conceded the agreement is therefore unenforceable, we need not proceed any further into an examination of whether Title VII's fee-shifting provisions override an arbitration agreement. *See First Ins. Funding Corp. v. Federal Ins. Co.*, 284 F.3d 799, 806 (7th Cir. 2002); *Burgin v. Broglin*, 900 F.2d 990, 994 n.3 (7th Cir. 1990). The verbal admission by SCI's counsel at oral argument is a binding judicial admission, the same as any other formal concession made during the course of proceedings. *See Soo Line R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997); *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal."); *In re Lefkas Gen. Partners*, 153 B.R. 804 (N.D. Ill.1993) (noting that judicial admissions are "any 'deliberate, clear and unequivocal' statement, either written or oral, made in the course of judicial proceedings."). The agreement prohibits the recovery of attorney's fees in any situation, thus, based on SCI's concession, we find that the arbitration clause is unenforceable. The district court's order compelling arbitration is therefore REVERSED and REMANDED for further proceedings consistent with this opinion.

ROVNER, *Circuit Judge*, concurring in the judgment. Without any majority, the court today reverses and remands the district court's order compelling arbitration. I would reverse and remand for the reasons stated in *McCaskill v. SCI Management Corp.*, 285 F.3d 623 (7th Cir. 2002), *reh. granted and op. vacated by McCaskill v. SCI Management Corp.*, ___ F.3d ___, 2002 WL 1362232 (7th Cir. 2002), in which Judge Bauer originally joined, and I reproduce some of that opinion below. I cannot join in Judge Bauer's separate opinion on this rehearing,[1] which would reverse a district court's decision without ever ascertaining whether that decision was correct—through an unprecedented expansion of the doctrine of judicial admissions. In its zeal to circumnavigate the difficult issue presented to it, Judge Bauer's opinion has seized on a solitary comment by the appellee, SCI, during oral argument and transformed it from a candid assessment of the merits of SCI's position, into an edict binding this court from deciding an issue squarely raised by the appellant and argued in the briefs. That holding is simply stunning.

All of the briefs submitted in this case addressed whether the arbitration agreement, if interpreted to preclude attorney's fees, was unenforceable. In addition, SCI further

---

[1] The dissent remains consistent from that earlier opinion, and I will not further address it here. I remain convinced that we possess jurisdiction because the intent of the court is ascertainable from the order and is consistent with the parties' own understanding. The parties' stipulations should be given deference by the court to the extent that they are factual rather than legal in nature, as our decision in *ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 235 F.3d 360, 363 (7th Cir. 2000) recognizes. Judge Bauer's opinion gives preclusive effect to a legal rather than factual statement, and the dissent gives no weight to the parties' stipulation as to a factual issue.

argued that the arbitration agreement should not be interpreted as barring the award of attorney's fees. At oral argument, SCI emphasized the latter argument, at one point acknowledging in response to a question that if the court interpreted the agreement as barring attorney's fees, then the agreement was "inconsistent" with Title VII. That statement was an accurate assessment of the weakness of SCI's position in light of the law. Judge Bauer's opinion, however, has seized upon that statement at oral argument, declared that it is a binding "judicial admission," and based solely on that "admission," has determined that the arbitration agreement is unenforceable. The problems with that holding are myriad.

First, SCI's assessment of the law as an appellee cannot constitute a judicial admission, because it was not a concession as to a fact in issue, but rather a statement of legal opinion. "The scope of a judicial admission by counsel is restricted to unequivocal statements as to matters of fact which otherwise would require evidentiary proof; it does not extend to counsel's statements of his conception of the legal theory of a case." Michael H. Graham, 30B FED. PRAC. & PROC. EVID. (Interim ed.) § 7026 (2002). That understanding of the scope of judicial admissions is a longstanding one. For instance, in *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963), the court defined judicial admissions as follows:

> A judicial admission is usually treated as absolutely binding, but such admissions go to matters of fact which, otherwise, would require evidentiary proof. They serve a highly useful purpose in dispensing with proof of formal matters and of facts about which there is no real dispute. . . . The doctrine of judicial admissions has never been applied to counsel's statement of his conception of the legal theory of the case. When counsel speaks of legal principles, as he conceives them and which he thinks applicable, he makes no judicial admission and sets up no estoppel which would prevent

the court from applying to the facts disclosed by the proof, the proper legal principles as the Court understands them.

That conception of judicial admissions has persisted throughout the cases leading up to this decision. *See*, *e.g.*, *New York State Organization for Women v. Terry*, 159 F.3d 86, 97 n.7 (2d Cir. 1998) ("This argument relies on a misunderstanding of the nature of judicial admissions, which are statements of fact rather than legal arguments made to a court."); *Solon v. Gary Community School Corp.*, 180 F.3d 844, 858 (7th Cir. 1999) and *Keller v. United States*, 58 F.3d 1194, 1198-99 n.8 (7th Cir. 1995) (*quoting* FED. PRAC. & PROC., and stating that judicial admissions " 'have the effect of withdrawing a fact from contention.' "); *Mac-Donald v. General Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997) (holding that counsel's statement on an issue of negligence was not a judicial admission because it constituted a legal opinion or conclusion rather than a matter of fact); *Guidry v. Sheet Metal Workers International Association, Local No. 9*, 10 F.3d 700, 716 (10th Cir. 1993) *modified on other grounds*, 39 F.3d 1078, 1081 n.3 (10th Cir. 1994) (rehearing en banc) ("Judicial admissions are formal admissions . . . which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. [citations omitted] Because the matter Mr. Guidry claims was admitted is a proposition of law, the doctrine of judicial admission is not applicable.") The statement at oral argument in this case was similarly a statement of legal opinion, not a stipulation of fact. As such, it is not a judicial admission binding on the appellee, and certainly is not binding on this court.

In fact, even if the statement had been one of fact, and therefore fell within the doctrine of judicial admission, it would not be binding on this court. The alleged "admission" was nothing more than a one sentence response to a hypothetical question at oral argument in which the court

asked the appellee to assume that the arbitration agreement was construed as preventing an award of attorney's fees to the plaintiff, and then asked if the arbitration clause would be unenforceable because it deprived the plaintiff of the opportunity to seek her Title VII remedies. The appellee responded affirmatively that such a scenario would be inconsistent with Title VII, but emphasized that the court should not construe the agreement in that manner. That brief response to the court's question is not the sort of deliberate, clear, and unambiguous statement evincing an intentional waiver that has been held sufficient to constitute a judicial admission. *See Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997) ("waivers and concessions made in appellate oral argument need to be unambiguous before they are allowed to change the outcome of an appeal from a reversal to an affirmance."); *see also Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) ("A statement made by counsel during the course of trial may be considered a judicial admission if it was made intentionally as a waiver, releasing the opponent from proof of fact."); *MacDonald*, 110 F.3d at 340 (declaring that "[i]n order to qualify as judicial admissions, an attorney's statements must be deliberate, clear, and unambiguous" and must constitute a deliberate voluntary waiver.); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 170 (1972) ("[W]e are loath to attach conclusive weight to the relatively spontaneous responses of counsel to equally spontaneous questioning from the Court during oral argument."). In fact, SCI never repudiated the arguments in its brief, in which it contested the proposition that the agreement was unenforceable. Even if judicial admissions extended to legal opinions, which is clearly false, the statement at issue here cannot be characterized as an unambiguous, intentional waiver of the arguments made in its brief.

Finally, even if the statement satisfied all of the above criteria, it would not bind this court because the court

has the discretion to consider the issue despite the judicial admission. *See Solon*, 180 F.3d at 858 (recognizing that court may allow party to withdraw a judicial admission); *Martinez*, 244 F.3d at 477 (same); *New Amsterdam Casualty Co.*, 323 F.2d at 24 ("a court, unquestionably, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission."). Here, it is unimaginable that if we believed that the district court decision was correct on the law, we would nevertheless reverse that decision because the appellee thought we would. The court would undoubtedly in that scenario exercise its discretion and decide the issue. In fact, we have repeatedly held that on review of summary judgment, we may affirm the decision of the district court on any ground apparent in the record. *Vargas-Harrison v. Racine Unified School Dist.*, 272 F.3d 964, 974 (7ᵗʰ Cir. 2001). Of course, all of this discussion is hypothetical in nature, because for good reason the doctrine of judicial admissions does not apply to legal opinions of the parties.

The contrary position offered by Judge Bauer would mean that one party's characterization of the law would necessarily bind this court and dictate the outcome of the appeal. I have been unable to find any other case in which a statement at oral argument was used in this manner, and the cases cited by his opinion all involve issues of fact, not law. The repercussions of such a holding would be widespread if the court actually followed this approach in all cases. For example, imagine the scenario in which a district court grants summary judgment to an employer in a discrimination case. The plaintiff then appeals, and the issues identified by the plaintiff on appeal are fully briefed. At oral argument, however, the employer opines that it believes it will lose on one of those issues. Under Judge Bauer's approach today, we

would be bound by that "judicial admission" and would be required to remand *the district court's correct decision* for a trial on the merits. Or consider the scenario, not uncommon, in which an appellee wrongly declares that a controlling Supreme Court case is inapplicable, and argues instead based on other cases. Would we as a court then ignore the controlling Supreme Court case because of that "judicial admission?" That is unlikely to happen in this court, nor should it, and it should not happen in this case either. These examples illustrate the folly of expanding the judicial admission doctrine beyond its application to facts, to control aspects of law. Judge Bauer's opinion represents an unfortunate expansion of the judicial admission doctrine that was designed to streamline the judicial process. By allowing the reversal of even a proper district court decision, the expanded judicial admission approach betrays that purpose and sacrifices judicial efficiency and clarity in the law, for no gain.

The enforceability of the arbitration agreement was raised by the appellant in this case and briefed by both parties. The court has the responsibility to decide that issue, rather than reversing because the appellee thinks it is going to lose. SCI should lose, for the reasons stated in the opinion originally issued by this court, but the district court deserves better than to see its decision remanded based on a party's, rather than the court's, assessment of the law. For the convenience of the reader, I reproduce the relevant part of the prior opinion in this case addressing the merits of the enforcement issue, followed by some closing comments:

The arbitration agreement at issue here provides for the arbitration of a number of employment-related disputes, including those based on harassment or discrimination. It excludes other types of claims likely to be brought by SCI, such as disputes related to noncompetition or confidentiality agreements, and "any claim by the Company against the Employee which is based upon fraud,

theft or other dishonest conduct of employee." Agreement ¶ 2. The arbitration agreement further specifies as follows:

> Each party may retain legal counsel and shall pay its own costs and attorneys' fees, regardless of the outcome of the arbitration. Each party shall pay one-half of the compensation to be paid to the arbitrator(s), as well as one-half of any other costs relating to the administration of the arbitration proceeding (e.g., room rental, court reporter, etc.).

Agreement, ¶ 4. Some courts have refused to enforce arbitration agreements which mandate that the parties each pay half the costs of arbitration, while others have considered whether the cost-shifting provision renders the arbitration proceedings inaccessible for that individual. *See, e.g., Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000); *Brown v. Wheat First Securities, Inc.* 257 F.3d 821 (D.C. Cir. 2001); *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549 (4th Cir. 2001); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith*, 170 F.3d 1 (1st Cir. 1999); *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361 (7th Cir. 1999); *Shankle v. B-G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999); *Cole v. Burns International Security Services, Inc.*, 105 F.3d 1465 (D.C. Cir. 1997). We need not address the issue here, however, because the attorney's fees provision renders the agreement unenforceable.

In *Gilmer v. Interstate Johnson Lane Corp.*, 500 U.S. 20, 26 (1991), the Supreme Court held that claims under federal statutes may be appropriate for arbitration as long as the litigant may effectively vindicate her statutory cause of action in the arbitral forum, and the statute will continue to serve its remedial and deterrent purposes. *Williams v. Cigna Financial Advisors Inc.*, 197 F.3d 752, 763 (5th Cir. 1999). *See also Equal Employment Opportunity Commission v. Waffle House*, 534 U.S.279, 122 S. Ct. 754,

761 (2002) (narrowly construing impact of arbitration agreement to hold that the existence of an arbitration agreement between private parties does not affect the EEOC's right to seek all remedies). One of the remedies provided by Title VII is that attorney's fees may be awarded to a prevailing plaintiff, 42 U.S.C. § 2000e-5(k), and we noted in *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 872 (7th Cir. 1995), that a prevailing party should ordinarily recover attorney's fees absent special circumstances rendering such an award unjust. In *Dunning*, we emphasized the importance of the fees provision to the purposes of Title VII:

> Attorney's fees in Title VII litigation are not limited to a proportion of the monetary damages assessed in the case because, as Congress has recognized, a plaintiff in any civil rights suit acts "not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest importance." [citations omitted] . . . A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting § 1988. Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.

*Id.* at 873 n.13. The right to attorney's fees therefore is integral to the purposes of the statute, and often is central to the ability of persons to seek redress from violations of Title VII. In recognition of the importance of the attorney's fees provisions to the remedial and deterrent

effect of Title VII, counsel for SCI conceded at oral argument that if we construe the arbitration agreement as not allowing the arbitrator to award attorney's fees, then the agreement deprives the plaintiff of remedies under Title VII and is unenforceable.

The attorney's fees provision in the arbitration agreement quite plainly does just that. It mandates that each party shall pay its own attorney's fees regardless of the outcome of the arbitration. SCI attempts to avoid that plain language with a novel interpretation. According to SCI, the provision regulates only what McCaskill is responsible for paying, not what she may be awarded, and thus it is possible for an arbitrator to award her attorneys' fees consistent with the arbitration agreement, as long as she uses that award to pay her attorneys. That defies the plain meaning of the words. SCI has identified no other context in which a court would hold that a provision requiring a person to pay her own attorney's fees actually means the opposing party may be required to pay the fees to her, and then she must pay her own attorney. The provision obviously means that neither party can be required to pay the attorney's fees of the other party, either directly or through the straw man approach advocated by SCI.

In fact, the Ninth Circuit reached that conclusion regarding a similar clause in *Graham Oil Co. v. ARCO Products Co., a Div. of Atlantic Richfield Co.*, 43 F.3d 1244 (9th Cir. 1994). The arbitration agreement in *Graham Oil* was part of a distributor agreement with a franchisee, and provided that each party would bear its own attorney's fees. *Id.* at 1247. The court recognized that franchisees may agree to an arbitral forum for resolving statutory disputes, but stated that they may not be forced "to surrender the statutorily-mandated rights and benefits that Congress intended them to possess." *Id.* The court held that the attorney's fees clause purported to forfeit

the statutorily-mandated right to recover attorney's fees provided under the Petroleum Marketing Practices Act (PMPA). *Id.* It further noted that the right to attorney's fees was important to the effectuation of the PMPA's policies, specifically the purpose of deterring a franchiser from improperly contesting meritorious claims, and accordingly held that the clause contravened the PMPA. *Id.* at 1248. The court then held that the attorney's fees clause, as well as two other contravening clauses, were not severable from the arbitration agreement as a whole—a claim not even raised in this case and therefore not before us here.

Similar to *Graham Oil*, the clause here purports to forfeit McCaskill's statutory right to attorney's fees, a remedy that we have already recognized is essential to fulfill the remedial and deterrent functions of Title VII. Because the provision prevents her from effectively vindicating her rights in the arbitral forum by preemptively denying her remedies authorized by Title VII, the arbitration agreement is unenforceable.

I note that this position has recently been challenged in *dicta* in *Metro East Center for Conditioning and Health v. Qwest Communications Intern., Inc.*, ___ F.3d ___, 2002 WL 1378752 (7th Cir. 2002). *Metro East* relies on the Supreme Court's decision in *Evans v. Jeff D.*, 475 U.S. 717 (1986), stating that *Evans*, "a case the *McCaskill* court did not mention, holds that plaintiffs may forego attorney's fees under 42 U.S.C. §1988," and arguing from that proposition that employees can contract away their remedies. *Id.* at *5. *Evans* went unmentioned in the initial *McCaskill* opinion because it is unrelated to the arbitration issue decided in *McCaskill*. In *Evans*, the Court addressed whether it could enforce a consent decree that waived attorney's fees in exchange for relief on the merits greater than could reasonably be expected at trial. The Court held that Congress did not intend to ban "all fee

waivers offered in connection with substantial relief on the merits." 475 U.S. at 730. Instead, the Court held that Congress enacted the fee-shifting provision as "'an integral part of the remedies necessary to obtain' compliance with civil rights laws [citation omitted] to further the same general purpose—promotion of respect for civil rights—that led it to provide damages and injunctive relief," and that the exchange of fees for other relief to which he indisputably is not entitled is no more objectionable than a concession on damages to secure broader injunctive relief. *Id.* at 731-32. Thus, the Court recognized that attorney's fees were an integral part of the arsenal of remedies, and that they could be subject to the negotiations concerning those remedies. That is a far cry from a blanket waiver in an arbitration agreement required as a condition of employment. In fact, the Court explicitly distinguished the case before it from one involving a policy of demanding a fee waiver. *Id.* at 740. The *Evans* Court recognized the importance of the fees provision among the remedies available to a litigant and therefore supports the holding that an arbitration agreement eliminating that right fails to provide the litigant with a forum in which she can effectively vindicate her statutory rights.

For the reasons set forth in this opinion, I believe that the district court's order compelling arbitration should be reversed and remanded and accordingly I concur in the judgment.

MANION, *Circuit Judge*, dissenting. My colleagues agree that although the district court neither dismissed the case nor ordered a stay following its order to compel arbitration, the decision is nevertheless final and thus appealable because SCI moved to dismiss instead of requesting a stay and because McCaskill agrees the court dismissed the case. They also agree, for very different reasons, to reverse the district court's order compelling arbitration and to remand for further proceedings, presumably a trial on the merits. Because the district court did not either dismiss the case or order a stay pending arbitration, in my view its order is not a final decision and is thus not appealable. This court should remand and direct that the district court either dismiss the case or order a stay.

Longstanding federal policy strongly favors arbitration. *Green Tree Fin. Corp.-Alabama, et al. v. Randolph*, 531 U.S. 79, 91 (2000) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Section 16 of the Federal Arbitration Act ("FAA") governs appellate review of arbitration orders. It provides, in relevant part, that an appeal may be taken from "a final decision with respect to an arbitration . . . ." 9 U.S.C. § 16(a)(3). In addition, an appeal may not be taken from an interlocutory order "compelling arbitration . . . ." 9 U.S.C. § 16(b)(3). The FAA does not define the term "final decision." In *Green Tree*, the Supreme Court interpreted the phrase according to its well-established, plain meaning, i.e., a decision which "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." 531 U.S. at 86 (citations omitted). In addressing a district court's order compelling arbitration and dismissing the case with prejudice, the Supreme Court held that such an order is a "final decision" and thus is immediately appealable pursuant to the FAA. *Id.* The Court noted, however, that if a district court enters a stay instead of

a dismissal, that order is not a final, appealable decision under the FAA. *Id.* at 87, n.2.[1] *See Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90 (2d Cir. 2002) (order compelling arbitration and dismissing without prejudice was an appealable decision under the FAA); *ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091 (6th Cir. 2002) (order staying proceedings pending arbitration not appealable under the FAA); *Interactive Flight Tech., Inc. v. Swissair Swiss Air Transp. Co., Ltd.*, 249 F.3d 1177 (9th Cir. 2001) (order compelling arbitration and dismissing case without prejudice appealable under the FAA); *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316 (11th Cir. 2001) (order compelling arbitration and dismissing the case deemed appealable under the FAA).

Here, notwithstanding the court's assumption to the contrary, the district court did *not* actually dismiss the case. The court clearly could have ordered a stay. 9 U.S.C. § 3. Had the court issued the stay, as I see it under the appropriate procedure when compelling arbitration, any appeal at this stage would be barred. *See Green Tree*, 531 U.S. at 87, n.2. There is nothing in the district court's opinion that would allow us to infer that the court intended to dismiss the case. SCI filed a motion to compel arbitration *and* to dismiss the case. The district court's order, however, merely compelled arbitration. The

---

[1] In resolving questions of finality, we have asked whether an appeal is from an "embedded" (those involving a request for arbitration and other relief) or "independent" (a request to order arbitration solely) proceeding. Previously, an order compelling arbitration in an independent proceeding was appealable, whereas one in an embedded proceeding was interlocutory. *See Napleton v. General Motors Corp.*, 138 F.3d 1209, 1212 (7th Cir. 1998). The Supreme Court, however, rejected this distinction in *Green Tree*. 531 U.S. at 88.

order does not address, in any manner whatsoever, SCI's request for a dismissal of the case. While it is true that SCI's attorney stated at oral argument that the district court's opinion effectively dismissed the case, it is well settled that parties cannot agree to jurisdiction, nor can an attorney's assertion at oral argument establish finality in order to create appellate jurisdiction. *See ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 235 F.3d 360, 363 (7th Cir. 2000). Rather, we have consistently held that "[i]t is our threshold and independent obligation to make that determination even [when] both parties agreeably [consider an] order to be final and appealable." *ITOFCA*, 235 F.3d at 363 (citations omitted).

Additionally, the district court's indication that McCaskill could appeal subsequent determinations by the arbitrator is not evidence that it intended to dismiss. Rather, the statement is entirely consistent with the statutory procedure permitting judicial review of any final determination by the arbitrator. Had the court ordered a stay pending arbitration, all of the issues not resolved by this split opinion would then properly come before the district court, and perhaps before us, for full briefing and adjudication. Once a court determines that there is a valid and enforceable agreement to arbitrate and that the claims fall within the scope of the agreement, *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 844 (7th Cir. 1999), it can compel arbitration. At that point the statute provides only that the court order a stay pending arbitration. 9 U.S.C. § 3. That should have and very well could have been what the court had in mind when it issued its order to compel arbitration. Based on the record, we do not know that the court intended to dismiss the case.

Without a dismissal of the underlying case, the district court's order compelling arbitration remains an interlocutory order under Section 16(b)(3) of the FAA, and under *Green Tree*, we are not permitted to exercise jurisdiction

over this case. Of course, as previously noted, the district court may also grant a stay under Section 3 of the FAA, in which case we would not have jurisdiction since it would not be appealable. 9 U.S.C. §16(b)(1); *Green Tree*, 531 U.S. at 87, n.2.[2] In any case, it is incumbent upon district courts to fully address and clearly dispose of a motion filed by a litigant for the parties' benefit, to conserve its own judicial resources and to aid this court on review. *See Salim Oleochemicals*, 278 F.3d at 93 (urging "district courts in these circumstances to be as clear as possible about whether they truly intend to dismiss an action or mean to grant a stay . . . or whether they mean to do something else entirely."). *See also Dustrol, Inc. v. Champagne-Webber, Inc.*, 2002 WL 122500, *4 (N.D. Tex. Jan. 24, 2002) (citing *Green Tree*, district court clearly states that "the court dismisses this case because there are no longer any unadjudicated claims presently before the court.").

---

[2] I pause to take note of an issue left unresolved by the Supreme Court in *Green Tree*, i.e., whether a district court may dismiss a case under the FAA at all. *Green Tree*, 531 U.S. at 87 n.2 (declining to address whether district court *should have* entered a stay, rather than a dismissal). The plain language of the FAA gives a court only the power to grant a stay. *See* 9 U.S.C. § 3. In contrast, nothing in the FAA refers to the district court's power to dismiss a case. *See also* Stephen H. McClain, *Under a New Supreme Court Decision, Litigants Seeking Arbitration of a Dispute can Control the Timing of an Appeal*, 48-Aug. Fed. Law. 22, 25 (2001) (noting that, during oral argument of *Green Tree*, some of the justices questioned whether or not a stay was required under the FAA). This court has also questioned whether there is any statutory authority for dismissing a case when compelling arbitration. *See Kroll v. Doctor's Assoc., Inc.*, 3 F.3d 1167, 1172 (7th Cir. 1993). The uncertainty surrounding a district court's ability, or authority, to dismiss a case under the FAA is yet another reason to decline jurisdiction over this appeal.

Accordingly, I conclude that the order is not final in this case and would remand the case back to the district court for further disposition or clarification of its order.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*