# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- ) | |
| ) | |
| Raytheon Company ) | ASBCA Nos. 57743, 57798, 58280 |
| ) | |
| Under Contract No. N00024-04-C-6101 ) | |

APPEARANCES FOR THE APPELLANT:     Karen L. Manos, Esq.
                                   John W.F. Chesley, Esq.
                                     Gibson, Dunn & Crutcher LLP
                                     Washington, DC

APPEARANCES FOR THE GOVERNMENT:    E. Michael Chiaparas, Esq.
                                     DCMA Chief Trial Attorney
                                   Stephen R. Dooley, Esq.
                                     Senior Trial Attorney
                                   Alexander M. Healy, Esq.
                                   Kathleen P. Malone, Esq.
                                     Trial Attorneys
                                     Defense Contract Management Agency
                                     Boston, MA

## OPINION BY ADMINISTRATIVE JUDGE SCOTT
## ON THE PARTIES' MOTIONS TO STRIKE

In ASBCA No. 57443, at issue, Raytheon Company (Raytheon) appealed under the Contract Disputes Act, 41 U.S.C. §§ 7101-7109, from the Defense Contract Management Agency's (DCMA's) corporate administrative contracting officer's (CACO's) final decision demanding the return of government payments of allegedly expressly unallowable costs and assessing penalties and interest against Raytheon for including the costs in its corporate incurred cost proposal for 2004 (2004 Corporate Proposal). In addition to cost allowability questions, the appeal focuses upon Federal Acquisition Regulation (FAR) 42.709-5(c)'s penalty waiver provisions. [1]

---

[1] In the other captioned appeals, Raytheon was assessed penalties and interest for including alleged expressly unallowable costs in the incurred cost proposals of its Integrated Defense Systems business segment for 2004 and 2005. It determined not to contest the non-waiver of penalties, but it continues to advocate that the costs in question are not expressly unallowable and thus not subject to penalties (app. pre-hearing br. at 9 n.4).

The Board held a hearing on entitlement during which appellant moved to strike certain testimony by the CACO and related evidence on the ground that they contradicted a pre-hearing interrogatory response by the government. The parties briefed the motion after the hearing and, at appellant's request, the Board heard oral argument.[2] In its response to appellant's motion, the government moved to strike certain materials proffered by appellant in support of its motion, described below.

### STATEMENT OF FACTS FOR PURPOSES OF THE MOTIONS TO STRIKE

Appellant's first discovery requests in question, dated 17 February 2012, asked the government to produce all documents in connection with its decision to impose penalties regarding the costs included in Raytheon's 2004 Corporate Proposal (app. mot., ex. 1 at 41, Request No. 7). Interrogatories included the following:

Interrogatory No. 12 asked for the identification of all prior government audits or reviews related to Raytheon Corporate's purported noncompliance with Cost Accounting Standard (CAS) 405 (Accounting for Unallowable Costs), from 1 January 2002 through 1 September 2005 (app. mot. ex. 1 at 16). On 16 May 2012, the government responded:

> The Government is currently aware of the following Audit Reports which specifically concern Raytheon Corporate's compliance with CAS 405 between January 1, 2002 and September 1, 2005: Audit Report No. 2671-2006A19200008 (dated October 30, 2006); and Audit Report No. 2671-2007A19200002 (dated September 24, 2007).

(App. supp. R4, tab 682 at 33) The government describes the referenced 24 September 2007 report, which it included in its supplemental Rule 4 file (tab 285), as the "Incentive Compensation CAS 405 Audit Report" (gov't opp'n at 23, 25).

Interrogatory No. 20 asked:

> a. Do you agree that for the period of January 1, 2004 through May 31, 2005, Raytheon's corporate finance function had appropriate policies and personnel training and an internal control and review system that provided assurance that unallowable costs subject to penalties were precluded

---

[2] At the oral argument the Board stated that it would include its decision on the motion to strike as part of its post-hearing decision. However, it is now apparent that it will be more efficient, and will not delay the Board's post-hearing decision, if the Board decides the motion to strike first.

from being included in its indirect incurred cost rate proposals?

(App. mot., ex. 1 at 20)

Interrogatory No. 23 asked:

> a. Explain under what circumstances a contractor may include expressly unallowable costs in its final indirect cost rate proposals, but obtain a waiver under FAR 42.709-5(c).
>
> b. State with specificity each and every fact, factor, criteria, or other piece of information on which Respondent relies in assessing a contractor's request for a waiver under FAR 42.709-5(c).

(App. mot., ex. 1 at 22) In response to a government objection, by letter dated 15 June 2012, appellant stated:

> Raytheon clarifies this interrogatory for the Government.... [E]xplain why a waiver was not granted to Raytheon under FAR 42.709-5(c) for each cost in dispute in this litigation. Raytheon further requests that the Government respond to subpar[t] (b)...in full.

(App. mot., ex. 2 at 15)

On 16 August 2012, the government responded to appellant's restatement of Interrogatory No. 23(a) as follows in relevant part:

> The Government construes Raytheon's revised Interrogatory No. 23 to seek information concerning the factors taken into account by the relevant contracting officers [COs] when considering whether it was appropriate to waive the penalties applicable to the Corporate...CY 2004 Indirect Cost Proposa[l]. Our supplemental response identifies factors that the [COs] took into account when considering whether waiver of the penalties applicable to the CY 2004 Proposa[l] was appropriate; it does not necessarily constitute a description of the Government's contentions in these appeals or an exclusive list of all possible bases that could support the

3

determination that Raytheon is not entitled to a waiver of the penalties applicable to its CY 2004 Proposa[l].

(App. supp. R4, tab 690 at 2-3) The government discussed factors that CACO Dowd had considered in concluding that Raytheon would not be entitled to a waiver under FAR 42.709-5(c), including: "Mr. Dowd considered Raytheon's recurring inclusion of these unallowable costs in its proposals as indicative of systematic and continuing deficiencies in its internal controls and a lack of proper care" (*id.* at 6).

Regarding Interrogatory No. 23(b), the government stated in relevant part:

> In deciding to assess penalties against Raytheon and in consideration of any request for waiver made by Raytheon, Mr. Dowd...relied upon Raytheon Corporate's...various Final Certified Incurred Cost Proposals that included unallowable costs, the various DCAA [Defense Contract Audit Agency] Audit Reports which determined that Raytheon had included unallowable costs in its Proposals, DCAA Audit Reports finding that Raytheon's internal controls were deficient in some respects, documentation and correspondence concerning the negotiation of Raytheon's Certified Incurred Cost Proposals....

(App. supp. R4, tab 690 at 8)

On 3 October 2012 appellant deposed CACO Dowd, who testified:

> A. Yes, We have several CAS non-compliances, you know, that we are dealing with... So with those things in place, like I say, I would have to say we're working those non-compliances and inadequate system issues on a fairly regular basis.

> ....

> Q. And under what circumstances could it be inadvertent?

> A. Again, in my mind, I have to take a look at the entire situation. Again, we have the system issues, we have a number of CAS non-compliances, including a CAS 405

4

non-compliance for 2006, so in my mind I couldn't say it was inadvertent.

....

Q. And do you look at CAS 405—CAS non-compliances, generally?

A. Yes.

Q. And with regard to expressly unallowable costs, which CAS provision would you look at to determine whether there are relevant non-compliances in your decision to waive penalties.

....

A. I would consider other outstanding CAS 405 non-compliances....

Q. And so for expressly unallowable costs, so you would look at CAS 405 non-compliances, correct?

A. Correct.

....

Q. So is it true that any outstanding CAS non-compliances would be considered relevant to your decision, whether to waive a penalty on an expressly unallowable costs?

A. Yes.

....

Q. And if a contractor had to satisfy you, if in 2004, Raytheon sought to satisfy you as to the fact that it deserved a penalty waiver, what kind of showing would Raytheon need to make?

A. I don't think they could in 2004, because as we said before, we had issues with their systems, as well as we had issues with, you know, there was a CAS 405

5

non-compliance, and in regard to the 2006 cost and we had other CAS non-compliances outstanding as well.

....

A. I think if we had all of our systems, you know, were adequate, we had squared away all of our CAS non-compliances, specifically the CAS 405 non-compliance, if all of those had been taken care of, you know, that would, you know, lead a long way towards me feeling more likely to waive penalties, but again, I would have to consider, you know, the specific circumstances, and stuff at the time....

(Gov't opp'n, ex. G-1 at 28, 35, 43-44, 229-31)

CACO Dowd further testified in his deposition, in response to questioning whether CAS non-compliances listed in an audit report dated 27 April 2006 were considered in his decision not to waive penalties:

I would have considered the outstanding CAS 405 non-compliances and issues with CAS that were on the streets at the time. I mean that would have been part of my overall decision not to waive penalties.

(Gov't opp'n, ex. G-1 at 239)

On 4 October 2012 appellant deposed Rodger Christiansen, DCMA Raytheon's corporate contract specialist and DCMA's chief negotiator for Raytheon's 2004 Corporate Proposal, who testified that he had drafted the CO's final decision (COFD) at issue (gov't opp'n at 17). He further testified:

**Q. But yet you considered this subsequent CAS 405 non-compliance?**

A. That's correct.

**Q. And would you say that the subsequent CAS 405 non-compliance was determinative of your decision to impose penalties?**

A. It was one of the factors considered to assess the penalty.

6

....

**Q. What other factors were considered in assessing penalties in 2004?**

A. We also had on the street at the time and another CAS 405 on the incentive comp.

....

**Q. Incentive comp, there were no incentive comp issues – by incentive comp you mean what exactly?**

A. Raytheon's incentive compensation plan for bonuses and performance bonuses and so forth. I am not familiar. I know that there has been some sort of discussions on differences and equivalents on other areas, but the specifics of that audit report I am not familiar with.

....

**Q. Were there any other factors?**

A. Not to my knowledge. There could have been. My recollection is the principal one was the CAS 405 report.

**Q. So to recap, I asked you for the factors, the reasons why you issued penalties in the 2004 case and you said there was a CAS 405 non-compliance report for the calendar year 2006 year issue that related to some of the costs that were included in 2004, for example, the recruiting reminder items?**

A. That was one example, yes.

**Q. You mentioned there was another CAS 405 non-compliance report that was issued related to incentive compensation costs?**

A. That's correct.

(Gov't opp'n, ex. G-2 at 49-52)

7

Appellant's second set of discovery requests, dated 12 November 2012, asked for all documents, including audit reports, COFDs, CAS noncompliance findings, CAS 405 noncompliances and DCAA indirect cost/other direct cost audit reports relied upon by DCMA (including Messrs. Dowd or Christiansen) in DCMA's decision to impose penalties on Raytheon's 2004 Corporate Proposal (app. mot., ex. 3 at 16, Requests Nos. 53, 54). It also asked for all documents reflecting the reasons DCMA imposed penalties on the proposal (*id.* at 18, Request No. 69).

On 20 February 2013, the government agreed to identify the audit reports CACO Dowd had considered in reaching his decision that Raytheon was not entitled to a penalty waiver (*see* app. mot., ex. 5 at 10; app. supp. R4, tab 701 at 13).

In its 15 April 2013 third supplemental response to appellant's interrogatories, the government stated regarding Interrogatory No. 20(a):

> The Government answers sub-part (a) to this interrogatory in the negative. At the time Mr. Dowd issued his final decision, there were several DCAA audit reports in existence that identified problems in Raytheon's policies, personnel training, or internal control and review system related to excluding unallowable costs subject to penalty from its Corporate proposals. These included the following DCAA audit reports: [eight reports listed].
>
> *In addition, Mr. Dowd had recently issued a final decision dated January 10, 2011, in which he found that Raytheon had included expressly unallowable incentive compensation in its Corporate proposals since CY 2002. Subsequently, shortly after the May 2011 final decision at issue in this case, Mr. Dowd issued another final decision finding that Raytheon had included certain expressly unallowable costs associated with Raytheon's "Long Term Performance Plan" in its Corporate proposals since CY 2004. These expressly unallowable costs included "dividend equivalent" payments,* which Raytheon did not contest. These additional instances of Raytheon including expressly unallowable costs in its Corporate proposals also indicated that its policies, personnel training, and/or internal control and review system related to excluding unallowable costs were lacking.

(App. supp. R4, tab 701 at 6-7) (Emphasis added) The eight audit reports the government listed did not include the two audit reports at issue in appellant's motion to strike.

The government stated in relevant part regarding Interrogatory No. 23:

> The Government's supplemental response to Interrogatory No. 23 is given in accordance with Raytheon's restatement of subpart (a), which requests an explanation for why Raytheon was not granted a waiver of penalties under FAR 42.709-5(c) with respect to the specific costs in dispute in ASBCA No[]. 57743.... The Government construed Raytheon's revised Interrogatory No. 23 to seek information concerning the factors taken into account by the relevant [COs] when considering whether it was appropriate to waive the penalties applicable to the Corporate and IDS CY 2004 Indirect Cost Proposa[l]. Our supplemental responses identify factors that the [CO] took into account when considering whether waiver of the penalties applicable to the CY 2004 Proposa[l] was appropriate; they do not necessarily constitute a description of the Government's contentions in these appeals or an exclusive list of all possible bases that could support the determination that Raytheon is not entitled to a waiver of the penalties applicable to its CY 2004 Proposa[l].

(App. supp. R4, tab 701 at 12) The government identified the same eight audit reports it had listed in response to Interrogatory No. 20(a). The government does not now dispute appellant's contention that they "reported upon alleged events and conditions that occurred in 2006 and later," which post-dated the 2004 Corporate Proposal in question (app. mot. at 5-6).

In the government's pre-hearing brief, dated 25 April 2013, over a year before the October 2014 hearing, it repeated its response to Interrogatory No. 20(a). It stated that, prior to the COFD at issue, Mr. Dowd had recently issued a COFD that Raytheon had included expressly unallowable incentive compensation in its Corporate proposals since 2002 and that, shortly after the COFD at issue, he had issued another COFD finding that Raytheon had included expressly unallowable costs in its Corporate proposals since 2004, including dividend equivalents payments. (Gov't pre-hearing br. at 76-77)

The government alleges, without contradiction, that, "since 2004, there have been only **two** CAS 405 noncompliances that resulted in CACO Dowd issuing COFDs against Raytheon Corporate," apparently referring to the decisions identified in its response to interrogatory No. 20(a) and in its pre-hearing brief (gov't opp'n at 20). It states that these

9

CAS 405 final decisions found that "incentive compensation" and "dividend equivalents" costs included in Raytheon's yearly incurred cost proposals were "expressly unallowable" (*id.*). The government also asserts, without contradiction, that Raytheon had copies of the two audit reports at issue in appellant's motion to strike, which were addressed in the two COFDs (gov't opp'n at 4).

On 6 March 2014 appellant filed a Motion *In Limine* to Exclude Evidence of Alleged Post-Certification Control Deficiencies. It asked the Board "to exclude all documents and testimony, from the Rule 4 File and at the hearing, concerning alleged control deficiencies at Raytheon post-dating the May 31, 2005 submission of Raytheon's [2004 Corporate Proposal]" (gov't opp'n, ex. G-3 at 1). The motion covered 11 audit reports, including the Incentive Compensation CAS 405 Audit Report referred to above, which is the subject of other appeals currently before the Board (supp. R4, tab 285; gov't opp'n at 25, ex. G-3 at 4-5, ex. G-5 at 7). Appellant acknowledged that this audit report and two others in the government's supplemental Rule 4 file, which it had inadvertently included as part of its motion *in limine*, concerned 2004 and prior year costs, but it advocated excluding them on other grounds. (Gov't opp'n, ex. G-5 at 4 n.2)

The government's 28 March 2014 response to appellant's motion *in limine* stated:

> Mr. Dowd also considered other internal control deficiencies of which he was aware, including Raytheon's inclusion of several other expressly unallowable costs in its proposals on a recurring basis. [Citations omitted]
>
> ....
>
> Curiously, we note that several of the "post-certification" CAS noncompliances cited in Raytheon's motion and considered by the CACO actually concern noncompliances that occurred during and after FY2004, including during the period (January – June 2005), when Raytheon was preparing its FY2004 incurred cost proposal, and were also included in that proposal. *For example, Mr. Dowd was aware when he determined that a waiver was not appropriate that, since at least 2002, Raytheon had been including expressly unallowable incentive compensation costs for unallowable activity in its proposals. He was also aware that, since 2004, Raytheon had been including expressly unallowable "dividend equivalent payments["] (see FAR 31.205-6(i)(2)) in its proposals.* Raytheon has accepted Mr. Dowd's CAS 405 noncompliance determination and has

paid the penalties on these dividend equivalent payments, so there need be no time-consuming debate about them. There are more examples. [Footnote omitted]

(Gov't resp. at 5, 8) (Emphasis added)

Appellant replied in support of its motion *in limine* that CACO Dowd's deposition testimony demonstrated with "crystal clarity" that his "refusal to waive penalties was premised upon alleged 'CAS non-compliances outstanding' at the time of his 2011 COFD, in particular a report pertaining to '2006 costs'" (gov't opp'n, ex. G-5 at 3).

In a teleconference on 29 April 2014, oral argument was held on Raytheon's motion *in limine* to exclude evidence of alleged control deficiencies that occurred after it submitted its Corporate 2004 Proposal on 31 May 2005, and on a government motion *in limine* to exclude the evidence of appellant's proffered expert, Darrell Oyer. Contemporaneously, appellant kept a record of the oral argument that is essentially undisputed in relevant respects (app. reply, ex. 15). During the argument appellant specified the documents that its motion was intended to cover, which did not include the Incentive Compensation CAS 405 Audit Report and other documents originally included by mistake (*id.* at 8 and *see* above). Appellant's record states that:

> Judge Melnick [asked] whether Dowd considered any of these documents in making his decision not to waive the penalties at issue, and [appellant's counsel] responded that he did, clarifying that he specifically referenced Tab 292, the CAS 405 noncompliance relating to 2006 costs.

(*Id.* at 9) Judge Melnick denied both motions (Bd. corr., 1 May 2014 memo. of conference call) [3]

On 21 October 2014, at the hearing, CACO Dowd testified in response to a question by government counsel as follows in relevant part:

> Q.    ....
>
> Can you tell me, Mr. Dowd, in considering whether Raytheon could satisfy you that the [waiver criteria in FAR 42.709-5(c)(1)] are met, what factors did you consider?
>
> A.    ....

---

[3] The appeal was reassigned to Judge Cheryl Scott prior to the hearing.

11

*Secondly, we had two [CAS] 405 noncompliances out there that we were addressing, the first one being it was for dividend [equivalents].* You know Raytheon conceded that and ultimately paid the government...for dividend equivalents. *I believe it started roughly in the 2006 time frame forward and I want to say that it was for the 2004 to 2006* long-term conformance plan I believe is how Raytheon identifies it.

But anyway, I issued a demand letter to them for those dividend equivalents and Raytheon paid them. So, that concerned me.

*We have another CAS 405 that issued in the same time frame for what I called incentive compensation.* It was Raytheon pulled out the labor and some fringe costs for this unallowable activity that they pulled out of their incurred cost submission but they didn't pull out the associated incentive compensation associated with that.

(Tr. 6/252-53) (Emphasis added) At this point appellant moved to strike and oral argument ensued.

At the time of oral argument, while not entirely clear, government counsel apparently thought that the Incentive Compensation CAS 405 audit report had been among the audit reports listed in the government's supplemental interrogatory responses and that only one audit report had been omitted. Counsel believed that it had been omitted because there had been no CAS 405 audit report on the dividend equivalents issue. Rather a CAS 415 (Accounting for the Cost of Deferred Compensation) audit had been "dispositioned" (tr. 6/256, 263), and the government's concerns later evolved into the CAS 405 matters addressed in the COFD on dividend equivalents, issued on 2 June 2011. (*See* tr. 6/255-57, 263-64; gov't opp'n at 31-32)

Post-hearing briefing on appellant's motion to strike and the additional oral argument ensued. Appellant moves to strike from the hearing record and post-hearing briefing: CACO Dowd's hearing testimony at transcript 6/252, line 6, through transcript 6/279, line 3; transcript 7/5, line 4 through transcript 7/48, line 4; ex. A-20 (5 July 2011 letter from Raytheon to CACO Dowd concerning, *inter alia*, his COFD on dividend equivalents, and proffering payment); appellant's expert Oyer's hearing testimony at transcript 10/67, line 4, through transcript 10/78, line 4; and ex. G-3 (the latter COFD).

12

The government moves to strike appellant's inclusion of excerpts from otherwise sealed materials in a Court of Federal Claims proceeding, unrelated to the instant appeal, in which current government counsel were not involved, that include statements by the judge concerning the government's attempted submission of an errata sheet to CACO Dowd's deposition transcript in that proceeding.

## THE PARTIES' CONTENTIONS

Appellant notes that, before the hearing, in its ultimate response to interrogatory No. 23, the government named the factors considered by CACO Dowd in his decision to assess, and not waive, penalties upon Raytheon arising from allegedly expressly unallowable costs included in its 2004 Corporate Proposal, submitted on 31 May 2005. The response stated that CACO Dowd had considered eight DCAA audit reports. Appellant asserts that each of those reports concerns purported "control deficiencies" that occurred after 31 May 2005 and were not a relevant consideration for a CO making a waiver determination under FAR 42.709-5(c) (app. mot. at 1-2).

Appellant contends that, after the government learned of its position concerning relevance, CACO Dowd changed his factual position, but the government did not notify appellant or amend its interrogatory response. Appellant alleges that it was not until CACO Dowd was on the witness stand at the hearing that he stated he had relied upon two additional audit reports, which involved alleged CAS 405 noncompliances pertaining to the dividend equivalents issue, said to date back to 2004 and the incentive compensation issue, said to date back to 2002 (app. mot. at 6). Appellant states that the dividend equivalents audit report was not produced in discovery (*id.* at 7).

Appellant asserts that the government's response to interrogatory No. 23 is a "judicial admission" that bars CACO Dowd's allegedly contradictory hearing testimony and warrants granting its motion to strike the testimony and exhibits identified above. Appellant further contends that, apart from the judicial admissions doctrine, the Board should grant its motion to strike as a sanction against the government for its alleged failures to supplement its interrogatory No. 23 response and to produce "critical documents" pertaining to CACO Dowd's testimony that were responsive to Raytheon's discovery requests, apparently referring to the two allegedly "previously undisclosed" incentive compensation and dividend equivalents audit reports and the associated COFDs (app. mot. at 11, ex. 7 (tr. 7/31-32)).

The government opposes appellant's motion to strike on the ground that appellant had prior notice of CACO Dowd's disputed hearing testimony because: (1) the government's discovery responses and deposition testimony by Messrs. Dowd and Christiansen made it clear that CACO Dowd considered the two CAS 405 noncompliances in reaching his COFD at issue; (2) the government's failure to list two

13

audit reports in its interrogatory response was inadvertent, plus one of them was included in the government's supplemental Rule 4 file and appellant already had a copy of both of them; (3) CACO Dowd's reliance upon those noncompliances was plainly disclosed in the government's pre-hearing brief; and (4) appellant conceded at the oral argument on its motion *in limine* that CACO Dowd had considered the Incentive Compensation CAS 405 audit report in connection with the COFD at issue and Judge Melnick's denial of that motion disposes of appellant's current motion to strike. Appellant disputes this.

The government also contends that there was no binding judicial admission; even if there were a judicial admission, the Board should permit the government to withdraw and correct its interrogatory response; sanctions are not warranted; and appellant's motion to strike is "moot" because, in an abuse of discretion review, the Board must consider all reasonable bases for the CACO's decision (opp'n at 44).

## DISCUSSION

We first consider the government's contention that Judge Melnick's denial of appellant's motion *in limine* is dispositive of its current motion to strike because, if it were, we need go no further. However, Judge Melnick's succinct order, and essentially undisputed portions of appellant's record of the oral argument before him (*see* app. reply, ex. 15 at 8-9), do not lead to the conclusion the government advocates.

Regarding appellant's claim that the government is bound by judicial admissions, there is a distinction between evidentiary admissions and judicial admissions:

> When the term admission is used without any qualifying adjective, the customary meaning is an evidentiary admission, that is, words in oral or written form or conduct of a party or a representative offered in evidence against the party. *Evidentiary* admissions are to be distinguished from *judicial* admissions. Judicial admissions are not evidence at all. Rather, they are formal concessions in the pleadings in the case or stipulations by a party or its counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Thus, the judicial admission, unless allowed by the court to be withdrawn, is conclusive in the case, whereas the evidentiary admission is not conclusive but is always subject to contradiction or explanation.

MCCORMICK ON EVIDENCE, vol. 2, § 254 at 142 (4th ed. 1992) (footnotes omitted).

14

The United States Court of Appeals for the Federal Circuit recently stated:

> Although this circuit has had limited opportunities to address the doctrine, it is clear from other circuits that judicial admissions, which "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact," are limited to formal admissions made in, for example, a complaint, answer, or pretrial order.

*Reliable Contracting Group, LLC v. Department of Veterans Affairs*, 779 F.3d 1329, 1334 (Fed. Cir. 2015) (citations omitted). Other circuits have applied strict prerequisites for a finding that a judicial admission has occurred. For example, the First Circuit states:

> Unlike ordinary admissions, which are admissible but can be rebutted by other evidence, judicial admissions are conclusive on the party making them. Because of their binding consequences, judicial admissions generally arise only from deliberate voluntary waivers that expressly concede for the purposes of trial the truth of an alleged fact. Although there is a limited class of situations where, because of the highly formalized nature of the context in which the statement is made, a judicial admission can arise from the "involuntary" act of a party, considerations of fairness dictate that this class of "involuntary" admissions be narrow. Similarly, considerations of fairness and the policy of encouraging judicial admissions require that trial judges be given broad discretion to relieve parties from the consequences of judicial admission in appropriate cases.

*United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975) (citations omitted). The Third Circuit notes that, "to be binding, judicial admissions must be unequivocal." *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3rd Cir. 1972). The Sixth Circuit refers to "deliberate waivers of the right to present evidence" and quotes *Belculfine* in its description of judicial admissions. *McDonald v. General Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997). The Seventh Circuit refers to a judicial admission as "a clear, deliberate and unambiguous concession" and an "intentional waiver." *United States v. Cunningham*, 405 F.3d 497, 504 (7th Cir. 2005); *see similarly McCaskill v. SCI Management Corp.*, 298 F.3d 677, 682 (7th Cir. 2002) (to be sufficient to constitute a judicial admission there must be a "deliberate, clear, and unambiguous statement evincing an intentional waiver").

15

While "[j]udicial admissions can be made at any stage of a litigation," *Defoe Shipbuilding Co.*, ASBCA No. 17095, 74-1 BCA ¶ 10,537 at 49,907, the parties disagree as to whether interrogatory responses can constitute judicial admissions. The government contends, among other things, that they are not formal pleadings and they give rise, at most, to an evidentiary admission as to which the responding party is free to introduce additional or contrary evidence at trial, citing, *e.g.*, *Bradley v. Allstate Insurance Co.*, 620 F.3d 509, 527 n.21 (5th Cir. 2010) ("interrogatory responses are not binding judicial admissions") (gov't opp'n at 33-35).

Appellant responds that there is a split in authority as to whether interrogatory responses constitute judicial admissions, citing, *e.g.*, *Spectrum Sciences and Software, Inc. v. United States*, 98 Fed. Cl. 8, 27 (2011) ("a response to a contention interrogatory is a judicial admission"), but it alleges that the Board has so treated them (app. reply at 14). However, the two Board cases to which appellant cites for this proposition do not support it. In *Polote Corp.*, ASBCA No. 31115, 86-1 BCA ¶ 18,640, *aff'd on recon.*, 1986 ASBCA LEXIS 802 (12 March 1986), there was no clear discussion of a "judicial" admission in an interrogatory response. Rather, the Board, on reconsideration, discussed an evidentiary admission by a party-opponent under FED. R. EVID. 801. In *Allied Materials and Equipment Co.*, ASBCA No. 17318, 75-1 BCA ¶ 11,150 at 53,067, appellant "filed comprehensive pleadings and made extensive requests for admissions and interrogatories which have provided the Board with a nearly comprehensive record of admitted facts undisputed by the parties." The Board stated that one of the appellant's monetary claims was allowed as the result of "Government judicial admissions," *id.* at 53,085, but it appeared to cite to government responses to requests for admissions and to the hearing transcript. Regardless, there was no specific finding that interrogatory responses were judicial admissions.

We conclude that, although the government's supplemental response to interrogatory No. 23 was inadvertently incomplete, it did not make any binding judicial admissions. There were no clear, deliberate and unambiguous concessions and intentional waivers of its right to present evidence concerning audit reports or other information upon which CACO Dowd is alleged to have relied in his determination not to grant penalty waivers to Raytheon. In fact, considering the government's response to Interrogatory No. 23 as a whole; its responses to Interrogatories No. 12 and 20(a); Messrs. Dowd's and Christiansen's deposition testimony; and the government's pre-hearing brief, appellant was on notice prior to the hearing that, in arriving at his COFD at issue, CACO Dowd considered alleged CAS 405 noncompliances, including in the incentive compensation and dividend equivalents areas, pertinent to time periods prior to 2006.

16

Moreover, we do not find evidentiary sanctions against the government to be warranted. It is up to the Board in its sound discretion to determine what evidence is admissible and the weight to be given it. *Laguna Construction Co.*, ASBCA No. 58324, 14-1 BCA ¶ 35,748 at 174,947 (addressing appellant's motion to strike); Board Rules 10(c), 11(d), 13(d). We will consider the omission of the two audit reports from the government's response to Interrogatory No. 23, to the extent relevant, in weighing the government's evidence.

In view of our decision, we do not reach the government's arguments that it should be allowed to withdraw and correct its response to Interrogatory No. 23 and that appellant's motion is "moot."

Turning to the government's motion to strike, the excerpts from the unrelated Court of Federal Claims proceeding that appellant would have us consider are not relevant to our decision on appellant's motion to strike. We grant the government's motion.

## DECISION

We deny appellant's motion to strike and grant the government's motion to strike.

Dated: 29 March 2016

CHERYL L. SCOTT
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

17

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 57743, 57798, 58280, Appeals of Raytheon Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals
